JACOBS v. OMAHA LIFE ASSOCIATION, *Appellant.*

### Division One, December 8, 1898.*

1. **Life Insurance:** ON ASSESSMENT PLAN: DEFINITION. If the payment of a policy or benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar policies, such policy is a contract of insurance on the assessment plan.

2. ————: ————: FIXED PREMIUMS. If the payment of the policy is dependent upon funds raised by fixed premiums to be paid at stated periods by the members insured, the company is not one on the assessment plan.

3. ————: ————: CASE STATED. The following clause in an insurance policy requiring fixed premiums at stated periods, did not change it into a contract of insurance on the assessment plan: "Nor shall anything in this policy contained be held a bar to the association calling upon the members for contributions in excess of that indicated herein, provided there shall at any time prove to be a deficiency in the mortuary fund, but no such additional contribution can be exacted until the uncredited portion of the reserve fund has first also been exhausted in payment of such deficiency."

4. ————: ————: MISREPRESENTATIONS IN APPLICATION: IMMATERIAL WARRANTIES. The policy in this case being held to be, not a contract of insurance on the assessment plan, but the policy of an old line mutual life insurance company, it is held that the statute providing that no misrepresentation made in the application shall be deemed material unless the matter misrepresented contributed to the event on which the policy became due, applies. And the misrepresented matter in this case in no wise having contributed to the death of the insured, the defense that the misrepresentations were warranties must fail.

5. ————: PAYMENT OF PREMIUMS: NOTE TO AGENT. The application stipulated that the policy should not be in force until a payment of a first premium to and an acceptance by the secretary of the company, "during my lifetime and in good health." The insured gave his note payable to the agent of the company and the agent gave the company's receipt for the first premium to the insured, and discounted

*NOTE.—Decided November 15, 1898. Motion for rehearing filed; denied December 8, 1898.

the note at the bank, took out and sent to the company the premium, and afterwards delivered the policy to the insured. The application was dated May 31, the policy June 1, and the insured died June 29, and after his death the bank presented the unpaid note as a demand against the insured's estate. *Held*, that the company, under these facts, can not maintain the defense that the first premium was not paid by the insured while "in good health and during his lifetime."

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Lavelock & Kirkpatrick, F. P. Divelbiss* and *Byron G. Burbank* for appellant.

(1) The petition alleged and the answer admitted that the Omaha Life Association was a benevolent corporation, and the undisputed proof showed it was doing a life insurance business on the "assessment plan." It, therefore, was not subject to the provisions of sections 5849 and 5850, R. S. 1889. *Whitmore v. Sup. Lodge,* 100 Mo. 47; *Hanford v. Mass. Ben. Ass'n,* 122 Mo. 50; *Haynie v. Indemnity Co.,* 139 Mo. 416; *Theobold v. Sup. Lodge,* 59 Mo. App. 87; *Sparks v. Life Indemnity Co.,* 61 Mo. App. 109. (2) The statements of assured in his application and examination were, by contract, made warranties, and if untrue in any respect, no recovery could be had on this policy. 1 Beach on Ins., sec. 456; Richards on Ins. [2 Ed.], sec. 53; 1 Bacon, Ben. Soc. [2 Ed.], sec. 197; *Loehner v. Ins. Co.,* 17 Mo. 255; *Mers v. Ins. Co.,* 68 Mo. 127; *Whitmore v. Sup. Lodge,* 100 Mo. 47; *Hanford v. Mass. Ben. Ass'n,* 122 Mo. 50; *Lama v. Ins. Co.,* 51 Mo. App. 447; *Maddox v. Ins. Co.,* 56 Mo. App. 343; *Hubbard v. Ins. Co.,* 57 Mo. App. 6; *Day v. Ins. Co.,* 29 Am. Rep. 565; *Ins. Co. v. McTauge,* 49 N. J. Law, 587; *Ins. Co. v. Yung,* 113 Ind. 159; *Cobb v. Cov. Mut. Ben. Ass'n,* 153 Mass. 176;

*Baumgart v. Mod. Wood.*, 55 N. W. Rep. (Wis.) 713;
*Jeffries v. Ins. Co.*, 22 Wall. 47; *Ins. Co. v. France*, 91
U. S. 510. (3) The statements and representations
being warranties their breach vitiated the certificate or
policy of insurance sued on; particularly was this true,
when by the terms of the contract, they were all de-
clared to be material to the risk. Richards on Ins.
[2 Ed.], sec. 58; 1 Bacon on Ben. Soc., sec. 212; 1
Beach on Ins., secs. 353 and 427; *Whitmore v. Sup.
Lodge*, 100 Mo. 47; *Holloway v. Ins. Co.*, 48 Mo. App.
6; *Maddox v. Ins. Co.*, 56 Mo. App. 345; *Hubbard v.
Ins. Co.*, 57 Mo. App. 6; *Jeffries v. Ins. Co.*, 22 Wall.
47; *Ins. Co. v. France*, 91 U. S. 510; *Day v. Ins. Co.*,
29 Am. Rep. 565; *Boyd v. Ins. Co.*, 90 Tenn. 222; *Ins.
Co. v. Simpson*, 88 Tex. 333. (4) This rule obtains
even though the assured may have acted in good faith;
especially is this true, where as in this case, the assured
stipulated in his application and examination that, if
any of the statements or answers contained therein,
whether made in good faith or otherwise, were in any
respect untrue, then the certificate or policy should be
null and void. May on Ins. [2 Ed.], sec. 300; Rich-
ards on Ins. [2 Ed.], sec. 55; 1 Beach on Ins., sec.
423; 1 Bacon on Ben. Soc. [2 Ed.], sec. 197; *Daven-
port v. Ins. Co.*, 6 Cush. 341; *Miles v. Ins. Co.*, 3 Gray,
580; *Baumgart v. Mod. Wood.*, 55 N. W. Rep. 713;
*Cozenore v. Ins. Co.*, 6 C. B. 437. (5) The payment
of the first premium in cash in the lifetime of the as-
sured as agreed in the application and medical exami-
nation and as stipulated in the by-laws of the defend-
ant, was, by contract, made a condition precedent to
the taking effect of the policy. The first premium was
not so paid in cash in the lifetime of Jacobs, hence, the
policy was not in force at his death. 2 Bacon on Ben.
Soc. [2 Ed.], sec. 323; 2 Beach on Ins., sec. 971;
*Noyes v. Ins. Co.*, 1 Mo. App. 589; *Misselhorn v. Life*

*Ass'n*, 30 Mo. App. 589; *Mooney v. Ins. Co.*, 72 Mo. App. 92; 1 Joyce on Ins., sec. 70. (6) The replication of the plaintiff admitted the answers of Jacobs relating to the date when his leg was broken, together with the other answers dependent thereon, were untrue. Under this admission of plaintiff, together with her testimony on the trial, is it possible to escape a forfeiture? He declared at the close of his medical examination that he had read over his answers and they were written as answered by him. Fraud, misrepresentation, imposition or deceit may excuse one from knowing the contents of a paper he signs, but negligence, never. Besides, there is no pretense of fraud or imposition. 1 Beach on Ins., sec. 416; *Snider v. Express Co.*, 63 Mo. 383; *Palmer v. Ins. Co.*, 31 Mo. App. 472; *Mensing v. Ins. Co.*, 36 Mo. App. 607; *School Dist. v. Ins. Co.*, 61 Mo. App. 600; *Ins. Co. v. Fletcher*, 117 U. S. 519; *Wilkins v. Mut. Life Ass'n*, 54 Hun. 294.

*J. W. Garner* and *C. T. Garner* for respondent.

(1) The petition avers that the appellant is a benevolent insurance company. The answer avers that it does business on the assessment plan. The burden of proof that appellant transacted business on the assessment plan was upon the appellant. Only benevolent companies that transact insurance upon the assessment plan are exempt from the provisions of the statute. *Jacobs v. Omaha Life Ass'n*, 142 Mo. 50. (2) The appellant did not transact a life insurance business on the assessment plan, for the reason that it provided for the payment of a fixed premium per annum, based on the current age, which provided for a paid-up policy upon which assessments ceased at the end of a fixed period, at the expiration of which period its policies became non-assessable. It gave

to the assured the option, at the end of ten years, of a cash settlement or the exchange of his policy for a paid-up policy. *Jacobs v. Omaha Life Ass'n*, 142 Mo. 50; *Hanford v. Mass. Ben. Ass'n*, 122 Mo. 50. (3) In determining whether the statements in the application and medical examiner's report were warranties or representations merely, the court will carefully examine the same; and the policy, the application and the medical examiner's report will all be construed together. *Kettendach v. Omaha Life Ass'n*, 49 Neb. 842; *Ins. Co. v. Simmons*, 49 Neb. 811; *Ins Co. v. Mary A. Booker*, 9 Heisk. 625; *Fitch v. Ins. Co.*, 59 N. Y. 557; *Garcelan v. Ins. Co.*, 50 Me. 580; *Jacobs v. Ins. Co.*, 142 Mo. 50. (4) The use of the word "warrant" in the instrument is not very significant. It certainly does not control the construction. *Redmon v. Ins. Co.*, 47 Wis. 90; *Fitch v. Ins. Co.*, 59 N. Y. 557; *Mouler v. Ins. Co.*, 111 U. S. 336. (5) The statements in the application, policy and medical examiner's report, taken together, do not constitute warranties but are mere representations and do not avoid the policy. *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842; *Ins. Co. v. Simmons*, 49 Neb. 811; *Fitch v. Ins. Co.*, 59 N. Y. 557; *Mouler v. Ins. Co.*, 111 U. S. 336; *Dellebar v. Ins. Co.*, 69 N. Y. 256; *Ins. Co. v. Johnston*, 80 Ala. 467; *Ins. Co. v. Woods*, 54 Kan. 663; *Life Ass'n v. Gillespie*, 110 Pa. St. 84. (6) The plaintiff, upon the introduction of the policy of insurance and proof of the death, made out a case and was entitled to recover. *Stewart v. Supreme Council Am. Legion of Honor*, 36 Mo. App. 319; *Forse v. Supreme Lodge Knights of Honor*, 41 Mo. App. 106.

BRACE, P. J.—This is an action upon a policy of insurance for $5,000 issued by the defendant to Robertson L. Jacobs payable to his wife Lizzie C. Jacobs,

the plaintiff, and dated the first day of June, 1894. Robertson L. Jacobs died on the twenty-ninth day of June, 1894, and the suit was instituted by his widow on the ninth of April, 1895, in the Ray county circuit court, where the defendant obtained judgment, from which the plaintiff appealed to this court. On the seventh of December, 1897, the judgment of the circuit court was reversed by this court, and the case remanded to the circuit court. 142 Mo. 49. On the second trial the plaintiff obtained judgment for the sum of $4,417.02 from which the defendant appeals. The pleadings in the case and the policy are set forth in the opinion on the former appeal, and need not be repeated here.

It appeared from the evidence that on the sixteenth of *March*, *1893*, the said Robertson L. Jacobs had his leg broken, which was then set and treated by Dr. Buchanan, and his family physician Dr. Jacobs. In his application which was made a part of the contract of insurance by the policy, the following interrogations and answers appear:

"8.   Name and residence of your usual medical attendant—Dr. M. C. Jacobs, Richmond, Mo.

"9.   For what disease or ailment have you required his advice or attendance?—Nothing of importance.

"10.   Have you consulted or obtained the advice of any other medical man within the past ten years? (If so state full particlars)—No.

"26.   State particulars of any illness, constitutional disease or injury you have had, giving date, duration and remaining effects, if any—None except broken leg, March '83.

"27.   When did you last consult a physician— When leg was broken.

"27*b*.   For what did you consult him—Above.

"28. Have you consulted or obtained the advice of any other medical man within the last ten years—No."

The first question before us is substantially the same as on the former appeal, *i. e.*: Whether or not the incorrect answer of the applicant in respect to the date of his injury and of the medical attention received therefor vitiated the policy.

(1) On the former appeal we held that the character of the contract was put in issue and that "if the contract was not on the assessment plan, then the false date of the injury will not avoid it unless material to the risk," and said: "An examination of the contract itself and of the application which is made a part of it, fail entirely to show that the 'benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts. ' The contract is conditioned upon the payment of the fixed sum of $26.60 quarterly. It is said in the *Hanford* case, (122 Mo. 50). 'It is true, the fifteen dollars to be paid and used as an expense fund is a fixed and defined sum paid annually and is in no sense an assessment. According to the first clause of the seventh condition of the policy the member must make a monthly payment at fixed and defined dates during his life, and the amount to be paid bi-monthly is also fixed by the table of rates. Thus far these policies are premium policies, for it does not make these fixed rates, payable at specified dates, assessments, to call them by that name.' The fixed quarterly payment required under the contract in question are not even called assessments. They are in fact simply premiums to be paid quarterly for the period of fifteen years if the insured lives that long. It is true the contract is made subject to all the conditions, requirements and benefits stated on the second and third pages of the

policy, but neither party has incorporated these in the abstracts furnished us, so we are not informed what they required." On the trial anew in the circuit court the defendant introduced in evidence the second and third pages of the policy and contends that it appears therefrom that the contract of insurance was on the assessment plan, and this is the principal question in the case. The evidence on said pages bearing upon the character of the contract, is as follows:

*"By-Laws, Conditions, Requirements and Benefits.*

## "I.

### *"Premiums.*

"Sec. 1. An annual premium (which may be paid in equal quarterly or semi-annual instalments, if so stated in the application herefor) shall be paid to the association at the times and in the manner stipulated in the face of this policy for the payment of premiums, which premium shall be in amount on each certificate of $1,000 according to the age of the insured at the date hereof, as provided in the premium table as herein contained.

## "II.

### *"Time of Payments.*

"Sec. 1. Notice of premiums becoming due shall be sent from the office of the association thirty days before they are made payable.

"Sec. 2. A printed or written notice directed to the address of a number as it appears at the time on the books of the association and deposited in the post-office in Omaha, with postage prepaid, shall be deemed a legal and sufficient notice of premiums becoming

due.  A certificate or memorandum made by the secretary or book-keeper showing such fact shall be taken and accepted as conclusive evidence of the mailing of such notice.

"Sec. 3.  All premiums are due within thirty days of date of notice thereof.  And in case of failure to pay when due, a second notice shall be mailed and directed as before, which second notice shall be due and payable within twenty days from date thereof; twenty-five cents shall be added to pay cost of such second notice, and if not paid at the expiration of such twenty days, then membership and the policy of such member shall be deemed forfeited and *ipso facto* null and void.  Reinstatement may be had on application, if approved by the medical director, by giving reasonable assurance of good health and continued good family history, payments of arrearages, and a reinstatement fee of fifty cents.  But a notice to pay premiums or dues sent to a lapsed member shall not be deemed a recognition of his membership, which shall be suspended until reinstated in the manner above indicated.

"Sec. 4.  Notices of premiums becoming due shall contain an itemized statement of the approved death-losses reported for the previous quarter, showing the name, age, number and date of policies held, name of beneficiary, with cause of the death of each such deceased member.

"Sec. 5.  Each premium is due in cash at the head office of the company in the city of Omaha, but will be accepted elsewhere when duly tendered in exchange for the company's receipt signed by the president or secretary.  Notice that each premium due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice required by any statute is thereby expressly waived.  That part of the full year's premium,

if any, which is not due at the time of the death of the insured, shall be deducted from the first instalment paid.    If this policy shall become void by non-payment of any premium, all payments previously made shall be the absolute property of the company, except as hereinafter provided.

"Sec. 6.    Each member of the association or his representatives shall. at once notify the association of any change in his residence or postoffice address.

## "III.

### "*Reserve Fund.*

"Sec. 1.    Twenty-five per cent of the premiums paid, after deducting $4 per $1,000 for each year, or fraction thereof, for expenses of management, shall be used to create a reserve fund, and the same shall be invested in the manner, and held for the uses provided for in the by-laws of this association.

"Sec. 2.    All payments made on account of the reserve fund in excess of $10,000 shall be invested and deposited in the manner provided in the foregoing section; and if the mortality experienced by this association shall at any time for the period of one year exceed the mortality predicted by Meech's Mortality Table, all losses in excess thereof shall be paid from the reserve fund in excess of the amount standing to the individual credit of the members of the association.

"Sec. 3.    The board of directors may, in the exercise of sound discretion, under the payment of death claims and expenses in whole or in part from the reserve fund before premiums are due and paid, in which event the amount thus used, with interest at the rate of six per cent per annum, shall be replaced from payments subsequently made to pay such losses and expenses—and for this purpose $10,000 of said fund, as

above provided, may be held by the association or deposited in a bank in cash without investment.

"Sec. 4.   The reserve fund may at any time be drawn upon to make up any deficiency found to exist in the mortuary fund.

"Sec. 5.   At the expiration of ten years from the first day of January next ensuing, the date of the incorporation of this association. and every year thereafter, the managing board of directors shall declare a dividend from the reserve fund in excess of $100,000 and cause to be placed to the individual credit of each member who has maintained in ten years' uninterrupted membership in the association his equitable share thereof, which sum thus issued is available and may be used by such member: (1) In payment of his ordinary dues and premiums; or (2) May be withdrawn in cash and membership terminated; or (3) May be left with the association for investment to augment the value of the policy at death; or (4) May be used to purchase a paid-up policy which will be issued on surrender or original policy for a sum equal to the amount of the individual credit improved at four and one half per cent during the life expectancy of the member as shown by the tables then in use by the association.

"Sec. 6.   The sum placed to the individual credit of the member, which may be withdrawn in cash or converted into a paid-up policy as provided by the foregoing section, shall be in amount not less than ten full annual premiums as paid by the insured.   And if the reserve fund be found insufficient to meet this liability, and deficiency therein shall be made good by transferring from the mortuary fund to the reserve fund such a sum as is required to make it good.

"Sec. 7.   One year before the expiration of such ten year period the member in order to avail himself of

his choice of the several of said options, shall notify the association in writing which of the foregoing forms of settlement he desires, otherwise he shall be deemed to have waived his rights under the foregoing sections of this article, and he shall thereafter continue the payment of premiums till the expiration of the full term of fifteen years from the date of this policy.

## "IV.

### "*When Full-Paid.*

"Sec. 1.   On the first day of January next ensuing after fifteen years full premiums shall have been uninterruptedly paid, this policy shall be and become full paid, the association appropriating from the interest of the assured in the reserve fund such a sum from time to time as may be required to keep the said policy in full force and effect.   While any unused portion of the reserve fund credited to such assured may be converted into additional term insurance on the basis of Meech's Mortality Tables computed at 4 per cent.

## "V.

### "*Mortuary Fund.*

"Sec. 1.   Seventy-five per cent of the premiums paid, after deducting $4 per $1,000 of indemnity for each year, or fraction thereof in force on the books of the association, shall be and constitute the mortuary fund of the association, which fund after being charged with the cost of its own collection and defense shall only be used for the purpose of paying the death losses of the association.   Nothing herein contained, however, shall preclude the association from appropriating to members of three consecutive years membership

contributions made to this fund in excess of the amount required by the death rate of the association, nor shall anything in this policy contained be held a bar to the association calling upon the members for contributions in excess of that indicated herein, provided there shall at any time prove to be a deficiency in the mortuary fund, but no such additional contribution can be exacted until the uncredited portion of the reserve fund has first also been exhausted in payment of such deficiency, and this condition applies to all policies alike without respect to time of issue.

## "VI.

### "*Total Permanent Disability.*

"Sec. 1. In the event the insured becomes totally and permanently disabled during the continuance of this policy in full force and effect, and when the same shall be made to appear to the full satisfaction of the medical director and the executive board, the association will at the option of the managing board of directors, upon the receipt and surrender of this policy in full discharge of all claims, pay to the insured a sum equal to one half the amount, which would be due in the event of the death of the insured occurring at the same time—payment subject to the agreements contained herein and in the application which is made a part hereof.

## "VII.

### "*Dividends.*

"Sec. 1. All premiums or parts thereof paid for the purpose of paying current death losses and not used for such purpose shall be placed to the credit of

the members paying the same, and may be used by them after three years to reduce the amount of the next subsequent year's premiums, but if not so used shall be held and invested by the association and be used to augment the cash and paid-up value of the policy at the expiration of the ten or fifteen year periods; provided that each fund of the association shall be chargeable with the cost of its own collection and defense.

## "XIV.

"Sec. 1. The full face value of this policy is payable when due and becomes a charge upon the mortuary fund held by the association at the time of the acceptance of the proofs of death, or upon any money that shall be realized from the next quarterly payment to such fund; also upon the reserve fund of the association as herein set forth, and from no other source of funds; *provided*, that if the insured shall come to his death before the expiration of five years from the date hereof, then there shall be reserved by the said association from the face hereof, such a sum as will, if added to the sum total of all premiums which will then have been paid by the insured, equal twenty-five per cent of the face hereof, and the board of directors shall invest the sum thus received for such purposes and in such funds as will best promote the interests and welfare of the association.

## "XV.

### "*Use of Premiums.*

"Sec. 1. All payments of premiums on account of this policy are received by this association as advance deposits for the purpose of paying the death losses and expenses experienced by the association,

and creating a reserve fund as provided by the by-laws, and failure to pay any of the premiums when due shall work a forfeiture to the association of all deposits or payments made prior thereto.

*"Premium Table on Each $1,000.*

| | | |
|---|---|---|
| 21– 5–$15 34 | | 26–$15 50 |
| 27– 15 65 | | 28– 15 84 |
| 29– 16 03 | | 30– 16 27 |
| 31– 16 49 | | 32– 16 74 |
| 33– 17 03 | | 34– 17 34 |
| 35– 17 75 | | 36– 18 05 |
| 37– 18 49 | | 38– 18 94 |
| 39– 19 45 | | 40– 20 00 |
| 41– 20 60 | | 42– 21 28 |
| 43– 22 02 | | 44– 22 82 |
| 45– 23 72 | | 46– 24 69 |
| 47– 25 77 | | 48– 26 94 |
| 49– 28 22 | | 50– 29 67 |
| 51– 31 22 | | 52– 32 95 |
| 53– 34 83 | | 54– 36 88 |
| 55– 39 15 | | 56– 41 65 |
| 57– 44 38 | | 58– 47 38 |
| 59– 50 68 | | 60– 54 30 |

"These rates are payable annually. Payments may be made semi-annually or quarterly if so indicated on face of policy."

Contracts of insurance on the assessment plan are defined by statute in the following terms: "Every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance on the assessment plan, and the business involving the issuance of such contracts shall be carried on in this State only by duly organized corporations." R. S. 1889, sec. 5860. "A contract of insurance must

fall within this definition before it becomes an insurance on the assessment plan." *Jacobs v. Omaha Ins. Co.*, 142 Mo. 59. Hence it is also provided by statute that any company organized under authority of another State to issue policies of life insurance on the assessment plan as a condition precedent to transacting such business in this State must deposit with the Superintendent of the Insurance Department "a copy of its policy or certificate and application, which must show that the liabilities of the members are not limited to fixed or artificial premiums." R. S. 1889, sec. 5865.

The primary and controlling principle of the statute is that the benefit is to be paid out of a fund raised by assessment upon other persons holding similar contracts, by which they are made liable for the payment of such assessments. No scheme of life insurance can come within this principle and become insurance upon the assessment plan, unless somewhere along the line of its operations provision is made for such an assessment, and liability for its payment created. The right to have the assessment made must be given to the insured; the duty to make it must be imposed upon the corporation, and liability for its payment upon its members.

Nowhere in the defendant's scheme of insurance as disclosed by the evidence in this case, can provision for such an assessment "in any manner or degree," be found. The payment of all the benefits provided for in their contracts of insurance is dependent upon funds raised and to be raised by the payment of fixed premiums of special amounts to be paid at stated periods, by the members insured, and for the payment of which only they have bound themselves.

These premiums are declared to be advance deposits for the payment of death losses, etc. The policies are made charges upon the funds thus raised,

payable therefrom, and *"from no other source or funds."*
No provision is made for supplying these funds by
assessments, which other persons holding similar con-
tracts are obliged to pay. On the contrary, such an
idea is negatived not only by the terms of the con-
tract, but by the provision for full paid policies after
uninterrupted payments of the premiums for fifteen
years; for dividends out of the reserve fund which may
be withdrawn in cash or converted into a paid-up
policy after ten years of such payments; by the absence
of any authority to any person or persons to levy such
assessments for the payment of the policies, or impos-
ing a duty upon the policy holders to pay them, but by
the utter exclusion of the word assessment from the
whole scheme—which in all its attributes is simply
that of an old line mutual life insurance company,
whose policies are dependent for payment upon funds
raised by a payment of fixed premiums, and not upon
the collection of assessments upon its members. The
only feature of this whole scheme, which is suggested
as taking it out of this class and bringing it within the
statutory definition of insurance upon the assessment
plan, is the following negative provision in section 1,
article V, *Mortuary Fund:* "Nor shall anything in
this policy contained be held a bar to the association
calling upon the members for contributions in excess
of that indicated herein, provided there shall at any
time prove to be a deficiency in the mortuary fund,
but no such additional contribution can be exacted
until the uncredited portion of the reserve fund has
first also been exhausted in payment of such deficiency,
and this condition applies to all policies alike, without
respect to time of issue."

By this provision no express authority to exact such
contributions is conferred upon the association, and no
duty to pay them directly imposed upon its members,

and no such authority or duty can be implied from its terms, to arise, until after the funds raised by the payment of the fixed premiums shall have been exhausted, and it is not perceived, even then, how such contributions could be exacted from those members whose policies had become paid up, or their exaction be required by any of the members, all of whose policies are made payable out of the funds so raised, and "from no other source or fund." But if this could be done, even then, it is not seen how these remote, contingent and hypothetical contributions which nobody is authorized to exact; to be made upon no specific plan; at no ascertained rate; for no specific purpose, and which are never to be called for until the funds actually raised for the payment of the policies by the fixed premiums, shall have been exhausted, can be said to enter into the scheme for raising these funds, or can convert the fixed premiums upon the payment of which the benefit of the policy actually depends, into assessments upon the collection of which the benefit depends.

In the *Hanford* case, *supra*, upon which the defendant relies, the member was required to pay an amount specified in a table of rates, for his age at entry printed on the back of the policy, bi-monthly, on certain days, "unless the board of directors shall by special notice require a different amount, and in such case the assessment may be based on the current age of the member," and while we held that the first part of this clause created a premium policy by reason of the fact that the amount and time of payment was fixed, yet, as by the latter part of the clause the board of directors were authorized to require the payment of a different amount by giving special notice, we also held that the contract, as a whole was upon the assessment plan. The fixed premiums provided for in the first part of the clause,

were made variable by the authority given to the board of directors to change the rate and base assessments upon the current age of the member, in the latter part of the clause, and the authority of the board of directors to make such assessments by special notice, having been exercised, the fund thus raised for the payment of the policies may be said to have been raised by assessment.

This, however, can not be predicated of the funds raised by defendant's scheme of insurance for the payment of its policies; in which no authority is given to the board of directors to change the rate of premium fixed in the beginning, but which remains fixed and unchangeable to the end. That case is therefore no authority for holding that the contracts of insurance of the defendant are upon the assessment plan, and as no good reason for so holding can be found in the plan itself, we hold that the policy in this case is *not* an assessment plan policy, and is subject to section 5849, Revised Statutes 1889, by which it is provided that, "No misrepresentation made in obtaining or securing a policy of insurance on the life of any person or persons, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due or payable, and whether it so contributed in any case, shall be a question for the jury." It is not pretended that the matters misrepresented contributed to the death of Jacobs, and the contention resting solely on the ground that the misrepresentations were warranties, and as such exempt from the operation of this statute for the reason that the defendant's insurance contracts were upon the assessment plan, this contention must fail.

(2) The contract of insurance contained a provision as follows: "The policy of insurance which may

be issued under the application shall not be in force until the first payment thereon shall have been paid by me in cash to, and accepted by the secretary of the Omaha Life Association, upon such policy of insurance during my lifetime and in good health,'' upon which, the defendant predicated a defense in the answer ''that the said Robertson L. Jacobs did not make said first payment *in cash* to the defendant while in good health or during his lifetime.'' It appears from the evidence that the application for this policy was made by Jacobs on the thirty-first of May, 1894, to Doctor R. Trotter, who was at the time the soliciting agent of the association; that on that day Jacobs executed his note payable to the said Trotter individually for $41.60; that Trotter on the same day indorsed the note, had it discounted in bank, received the proceeds, gave Jacobs the company's receipt for the amount of the premium, reported the same as paid, forwarded the application to the company, received the policy from the company, and delivered it to Jacobs. The policy purports to have been executed by the association at Omaha in the State of Nebraska on the first day of June, 1894, in consideration of the application, etc., ''and of the first premium paid on or before the delivery hereof.'' All this was done in the lifetime of Jacobs, and when he was in good health. These facts are not disputed, nor is it contended that the company did not in fact receive the amount of the premium from its agent, Trotter, in due course of the business, in fact, a tender of the amount with interest is made in the answer which sets up this defense. But it is contended that the transaction itself as disclosed by this evidence, was not a cash transaction but one upon credit—and the policy therefore never did go into effect. In *Dobyns v. Bay State Ben. Ins. Co.*, 144 Mo. 95, it was held that when an insurance company has issued and delivered its policy in

which payment of the premium is acknowledged, the company is estopped from denying the payment for the purpose of avoiding the contract of insurance, and it would seem upon the principle of that case, the defendant here ought to be estopped from denying payment in cash. However that may be, this transaction as between the company and the insured was not one upon credit. The note for $41.60 was not given in payment of the first premium of $26.60, but for the purpose of raising a cash fund out of which the premium could be paid. It was raised by the discount from the bank, and out of this cash, the premium was paid. No credit was extended by the company or its agent acting in its behalf for the premium. The only credit that was extended was by the bank to the maker and indorsee of the note, as individuals; as between the company, its agent, and the insured, it was purely a cash transaction. That the note after maturity was proven up by the bank against and paid out of the estate of the deceased, in no way changes the character of the transaction. The defendant having thus failed to sustain either of the defenses set up against plaintiff's cause of action, the judgment of the circuit court is for the right party, and ought to be sustained, and the same is accordingly affirmed.

All concur.