## ZULICA FOLKENS, Respondent, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, March 2, 1903.

1. **Insurance: OLD LINE: ASSESSMENT: POLICY.** If a policy in any manner or degree provides for the collection of an assessment upon persons holding similar contracts, the insurance is an assessment contract, and not old line.

2. ——: ——: ——: ——. To constitute a life policy on the assessment plan, there must be a provision for an assessment and a personal liability on the members to pay it, as well as a right given to a beneficiary to have the assessment made.

3. ——: ——: ——: ——. A policy of the defendant company is examined and held to be an old line contract, since it nowhere provides for an assessment for which persons holding similar contracts should be liable, and its assessment feature is distinguished from the requirements of the statute.

4. ———: ———: ———: ———: STATUTE. ELLISON, J., speaking
for himself: The statute means that an assessment contract is one
where the payment of the benefit depends upon the collection of an
assessment on the other members of the company holding similar
contracts, and if the payment *does not* so depend it is not an assess-
ment contract and the fact that the payment *may* in certain contin-
gencies depend on assessments is not sufficient to make an assessment
contract.

Appeal from Chariton Circuit Court.—*Hon. John P.
Butler*, Judge.

AFFIRMED.

*Lavelock & Kirkpatrick* for appellant.

(1) The defendant company was organized under
a statute providing for the incorporation of life insur-
ance associations on the "assessment plan;" its license
specially authorized the transaction of a life insurance
business on the "assessment plan," and the policy or
certificate sued on in this case is an "assessment con-
tract" as defined by the Missouri statutes. Gen. Stat.
Minn., sec. 3296; R. S. 1899, secs. 7906, 7901; Whit-
more v. Supreme Lolge, 100 Mo. 36; Hanford v. Ben.
Ass'n, 122 Mo. 50; Haynie v. Indemnity Co., 139 Mo.
416; Elliott v. Ins. Co., 163 Mo. 132; Haydel v. Life
Ass'n, 104 Fed. 718. ' (2) In this State, an assessment
contract of life insurance is not subject to the non-for-
feiture statute. Policies denominated "assessment con-
tracts" under section 7901 of the Revised Statutes, are,
by section 7910, expressly exempt from all the provis-
ions of article 2, chapter 119 of said statute, except the
sections therein specifically mentioned. R. S. 1899,
sec. 7910; Hanford v. Ben. Ass'n, 122 Mo. 50; Haynie
v. Indemnity Co., 139 Mo. 416; Aloe v. Life Ass'n,
147 Mo. 561; Elliott v. Life Ins. Co., 163 Mo.
132; Sparks v. Indemnity Co., 61 Mo. App. 109;
Haydel v. Life Ass'n, 104 Fed. 718. (3) A contract

of life insurance, providing for forfeiture in case of non-payment of premiums or assessments, in the absence of a controlling statute, is valid. The premiums and assessments are not debts of the insured, as such contract in this respect, is unilateral, and the insured may pay or forfeit at his option. If default be made the policy or certificate will lapse. If it were otherwise the insuring company would be without remedy in such case. May on Insurance (2 Ed.), secs. 341, 341a; Richards on Insurance (2 Ed.), secs. 37, 182; Ashbrook v. Ins. Co., 94 Mo. 72; Ellerbe v. Barney, 119 Mo. 632; Gaterman v. Ins. Co., 1 Mo. App. 300; Curtin v. Grand Lodge, 65 Mo. App. 294; Scheele v. Lodge, 63 Mo. App. 277; Worthington v. Ins. Co., 41 Conn. 372; Ins. Co. v. Statham, 93 U. S. 24; Klein v. Ins. Co., 104 U. S. 88; Thompson v. Ins. Co., 104 U. S. 252; Jeffries v. Ins. Co., 22 Wall. 47. (4) The policy or certificates sued on in this case is not a single yearly contract with the privilege of renewal from year to year by paying the annual premium, but it is a whole life contract subject to forfeiture for non-payment of premiums or assessments when due. In contracts of life insurance, time is material and of the essence of the contract, and in this case, it was expressly stipulated that the policy should lapse for default of payment of premiums or assessments; this the contracting parties distinctly covenanted should be the consequence of such default. 1 Beach on Contracts, secs. 80, 616; 2 Bacon on Ben. Societies (New Ed.), sec. 354, p. 701-2; Ellerbe v. Barney, 119 Mo. 633, 649; Sick v. Ins. Co. 79 Mo. App. 609; Wheeler v. Ins. Co., 82 N. Y. 583; Carpenter v. Life Ass'n, 68 Iowa 453; Worthington v. Ins. Co., 41 Conn. 372; Pitt v. Ins. Co., 66 Conn. 376; Ins. Co. v. Statham, 93 U. S. 24; Klein v. Ins. Co., 104 U. S. 88; Thompson v. Ins. Co., 104 U. S. 252, 257; Sheerer v. Ins. Co., 16 Fed. Rep. 723; Hawkshaw v. Supreme Lodge, 29 Fed. 773.

*Fred Lamb* for respondent.

(1) The respondent, to sustain the judgment found by the trial court in this cause, relies upon the application of sections 5856 and 5858, Revised Statutes 1889, known as the non-forfeiture law, to the policy in suit. (2) The policy filed was issued by a company which was authorized to do business in this State. There had been three full annual payments thereon. The policy had, when the fourth annual premium became due and remained unpaid, a net value, which applied according to the provisions of section 5856, supra, would have maintained said policy in force for a period of four months and seven days, from the 8th day of September, 1900, the date of lapse. The assured died on the 8th day of November, 1900. These facts are not disputed and upon this record respondent is entitled to have the judgment of the trial court affirmed. Cravens v. Ins. Co., 148 Mo. 610; Raymond v. Ins. Co., 86 Mo. App. 392; Horton v. Ins. Co., 151 Mo. 621.

ELLISON, J.—This is an action on a policy of life insurance in which the plaintiff prevailed in the trial court.

The insured paid his premium annually on the 8th day of September, 1897, 1898 and 1899. He failed on the fourth which fell due on September 8, 1900, and he died in the following November. Defendant claims to be what is known as an assessment company and that in consequence the non-payment of the last premium due forfeited the policy; and it is conceded by plaintiff that if the policy is based on the assessment plan as contemplated by the statute, it became void by reason of non-payment of the premium last due. But the contention of counsel for plaintiff is that defendant is an old line company, or at least that the policy is a contract of old line insurance and that it had a net value at the death of the insured sufficient to keep it in

force beyond the date of his death. This extended, or paid up insurance, so invoked by counsel, is based on the provisions of sections 5856-5859, Revised Statutes 1889, providing for such insurance on the contingency of a failure of payment of a premium on old-line policies when due. The reason for the contest over the kind of company defendant is, arises from the unfortunate and unjust distinction which the Legislature has made between the two kinds of companies, wherein it is provided that certain provisions of the law as to old line companies (among which are the sections aforesaid as to extended insurance) shall not be applicable to assessment companies. Art. 3, chap. 89, R. S. 1889.

So, therefore, it is only necessary to consider to which class of companies the defendant belongs. This will be determined, so far as this case is concerned, by the contract in the policy. If it is an assessment contract, as known to the law, then the sections of the statute aforesaid providing for extended or paid up insurance, known as the non-forfeiture statute, are not applicable. Sec. 5869, R. S. 1889.

An assessment contract, the statute says, is one wherein the payment of the benefit "is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts." Sec. 5860, R. S. 1889. If provision is made by the policy in any manner or degree, for an assessment, then it is an assessment contract. Elliott v. Ins. Co., 163 Mo. 133; Aloe v. Ins. Co., 164 Mo. 675. In the former Judge GANTT, and in the latter, Judge MARSHALL, review all the principal cases in this State on the subject. There must not only be provision made for such an assessment, but a liability of members created for its payment, as well as a right given to a beneficiary to have the assessment made. Jacobs v. Ins. Co., 146 Mo. 523, 538. For a provision for an assessment in certain contingencies would be valueless if there was no liability

on the members to pay it, or no right in the beneficiary to have it enforced:

The application made by the insured was for a policy "on the accumulative reserve plan;" and the policy was issued in consideration of a stated annual premium of $13.65. There is no other premium, or other consideration, called for by the policy, unless it be in the following "safety-clause" provision, which defendant insists makes the policy an assessment contract, viz.: "This association legally qualifies in the various States where it does business under the laws which do not require it to assume the liability of maintaining the legal reserve or level premium of old line companies. The rate upon which this policy is issued is based upon the American life tables, and according to American experience will be sufficient to fully carry out the terms of this contract. Should, however, an emergency (hitherto unknown to American experience) arise, which would exhaust the mortuary and reserve, or emergency fund, in excess of the amount of one mortuary rate upon all policies in force, then it is agreed that the policies in force may be assessed their pro rata, according to the American experience table of mortality, of the amount necessary to meet such emergency and maintain the solvency of the association." That provision does provide for an assessment in a certain contingency (so remote as never yet to have occurred in America, and as to which we will again refer) but it does not provide for any obligation on the insured's fellow-members to pay it. It provides for a *non personam* assessment upon other *policies*. The statute aforesaid makes necessary that the assessment shall be upon the "*persons*" holding the policies. An assessment upon the policy may cause its forfeiture if not paid, but it does not create a personal liability on the policyholder any more than a charge on real estate creates a personal liability upon the owner of such realty. One of the essential elements of an assessment contract, and

upon which each member of an assessment company has a right to rely, is that every other member is personally obligated to pay in, for his benefit, such an assessment as will make good the amount of his insurance. That there was no provision for an assessment against the member intended to be provided for by this safety clause, is made apparent by other provisions of the policy wherein it is provided (italics ours) that "*all* payments on this policy are *at the option of the insured, and no liability whatever* shall rest upon the association *or the insured* after the termination of this contract, excepting the insured shall still be bound by any notes or evidences of indebtedness given by him." This provision is one which is consistent with old-line insurance, where the annual premiums are paid by the voluntary act of the insured and where the only consequence of non-payment is a forfeiture of further insurance, there being no contractual obligation to pay future premiums. Richards on Insurance, sec. 37; May on Insurance, sec. 341a; Ellerbe v. Barney, 119 Mo. 649; Worthington v. Ins. Co., 41 Conn. 372; New York Life Ins. Co. v. Statham, 93 U. S. 24. But it is inconsistent with the idea of assessment insurance; as in the latter, from the very name and nature of an assessment company, the insured has a right to rely upon the liability of his fellow-members whenever payment from other sources fails.

Our attention has been called to the recent opinion of Judge BLAND of the St. Louis Court of Appeals in Williams v. Ins. Co., 71 S. W. 376, which treats of the present subject. In the policy in that case there is a provision reading that: "this policy shall be liable for its share of any deficiency caused" in the emergency fund. But that provision is immediately followed by another making the assessment a charge on the policyholder. The case is therefore in no way opposed to what we have written.

2. It will be noticed that the courts have from the beginning, marveled at the distinction which the

Legislature has made between assessment insurance and old-line companies. If the question were a new one I would say (speaking for myself only) that the distinction has been given most of its injurious effect by the construction which the courts have placed upon the statute defining assessment insurance. The statute is, that "if the payment of the benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, it shall be deemed a contract of insurance on the assessment plan." The courts have assumed that that language meant that if upon any contingency an assessment could be had within the terms of the contract, it made of it an assessment contract. The truth is, the language should never have received that construction. The statute does not refer to a contingency at all. The statute means as if it read that an assessment contract is one wherein the payment of the benefit depends upon the collection of an assessment on the other members of the company holding similar contracts. Manifestly, if the payment does not depend upon the collection of an assessment from other members it is not an assessment contract. The statute does not read that the payment *may* depend upon an assessment. It reads, that where the payment *does* depend upon such assessment. The words of the statute are, "the payment of which said benefit *is* in any manner or degree dependent upon the collection of an assessment." The words, "in any manner or degree" do not alter the fact that the payment, in each case, must depend in some part upon an assessment; they only refer to the mode and extent of the dependence. Each contract must, by some means and to some extent, absolutely depend for payment upon an assessment. This dependence may be provided for in any manner and in any degree, which is not a mere subterfuge designed for evasion, but it must exist. To say that an assessment may depend upon and be provided for in some remote contingency, so remote that it (ac-

cording to the present contract) has never yet happened and is beyond human experience in America, is to say that insurance may be perpetually effected at fixed premiums along the lines of regular insurance, and yet avoid the statute enacted for the protection of policy-holders. For it is only necessary that the company put in a provision for assessment upon a contingency which is too remote to in any way effect its business—a contingency, so remote as to be a *mere possibility* not worthy of consideration, then proceed to do old-line insurance wholly unaffected by the statute. By such construction a *bare possibility* that the contingency provided for may happen is enough to convert the old-line insurance into assessment insurance. So, while, even in criminal law, we refuse to allow a possibility of innocence to save a man his life or liberty, we permit it to deprive him of the benefit of a contract, which was designed to be protected by the statute. In Jacobs v. Ins. Co., 146 Mo. 538, Judge Brace, in delivering the court's opinion, said (italics mine): ''The primary and controlling principle of the statute is that the benefit *is to be paid* out of a fund raised by assessment upon other persons holding similar contracts, by which they are made liable for the payment of such assessments. No scheme of life insurance can come within this principle and become insurance upon the assessment plan, unless somewhere along the line of its operation provision is made for such an assessment, and liability for its payment created. The right to have the assessment made must be given to the insured; the duty to make it must be imposed upon the corporation, and liability for its payment upon its members.''

What we have said is not out of harmony with section 5864 of the statute which simply provides for an emergency fund which is to be invested in securities and which, with the interest thereon, is to be a trust fund held by the superintendent of the insurance department for the payment of death claims whenever the death

rate in any six months shall exceed the annual rate of mortality shown by the American life tables. The section is founded on the assumption that death claims will ordinarily be satisfied by other modes of payment so long as the deaths do not exceed the rate in the American life tables. But it does not by any means assume that those other modes are made up altogether from fixed premiums. Under section 5860, and from the very nature of assessment insurance, those other modes must, in part, at least, be made up of assessments, as we have pointed out. It was never contemplated by the Legislature that assessment insurance could be written for the payment of losses without the aid of assessments. To permit a contract in every way old-line insurance to be converted into assessment insurance by the subterfuge of an assessment only on a remote contingency, is to bring the statute to the support of a sham.

The judgment is affirmed. All concur.