## BOWEN v. NEW YORK LIFE INS. CO.

### No. 315.

District Court, E. D. Missouri, E. D.

April 4, 1940.

Rehearing Denied July 22, 1940.

706

Leahy, Walther, Hecker & Ely, of St. Louis, Mo., for plaintiff.

Jones, Hocker, Gladney & Grand, of St. Louis, Mo., for defendant.

COLLET, District Judge.

The action is one for recovery on a life insurance policy. The policy was for $10,000. It provided that if death was from accidental causes double that amount would be paid. The insured's death was suicidal. The face amount of the policy was paid the beneficiary. Payment of double indemnity was refused. This action, to recover the double indemnity, was brought upon the theory that the insured was insane at the time of his suicidal death. Under the law of Missouri death under such circumstances is accidental. The policy provides that double indemnity will not be paid in the event of suicidal death sane or insane. A Missouri statute provides that suicide shall be no defense unless it be shown that the insured contemplated suicide at the time of the application.[1] If the performance of the contract is to be governed by the law of Missouri plaintiff may recover on proper proof. If, as defendant contends, the law of New York or of Illinois controls performance of the contract, the contractual provision referred to is enforceable and plaintiff may not recover. The facts are stipulated. The questions presented arise on defendant's motion for summary judgment. The facts necessary to the determination of that motion follow.

At the time of the application insured was a resident of Centralia, Illinois, and a soliciting agent for defendant. On April 23, 1924, he executed the application at Centralia and on April 24, mailed it with his personal check for the full amount of the first semi-annual premium to the Missouri Clearing House office of defendant at St. Louis, Missouri. At the bot-

---

[1] Sec. 5740, R.S.Mo.1929, Mo.St.Ann. § 5740, p. 4385: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

tom of page one of the application appears the following:

"Declaration to be Signed by Applicant upon Making Any Payment with This Application.

."Dated at Centralia, Illinois, April 23, 1924.

"I hereby declare that I have paid to New York Life Ins. Co., One Hundred ninety-six & 30/100 Dollars ($196.30), in cash, and that I hold his receipt for the same, made up, without alteration, on the receipt form detached from and corresponding in date and number with this application. I assent to the terms of said receipt.

"No. 163870      (Signature of Applicant) J. E. Bowen"

The receipt referred to (detached and retained by insured) is, according to a blank form furnished by defendant, as follows:

"Received from —— this —— day of —— 19— the sum of —— Dollars ($ ——), in connection with an application for insurance in New York Life Insurance Company, said application corresponding in date and number with this receipt and containing said applicant's declaration that he has paid the sum hereby receipted for, and that he assents to the terms of this receipt, as follows, to wit:

"First. If the applicant paid the soliciting agent in cash at the time of signing the application the full amount of the first premium for the insurance therein applied for and so duly declared in his application, and there and then received from him this receipt, and not otherwise, the Company shall be bound in accordance with the agreement which is contained in the application and printed on the reverse side of this receipt for the convenience of the applicant.

"Second: Except when each and all the conditions obtain for the insurance taking effect coincident with the signing of the application, then—

"(a)  If a policy be delivered on said application, the Company will accept this receipt as cash toward the payment of the first premium.

"(b)  If within sixty days from this date the Company fails to offer to deliver a policy to the applicant, or offers to .deliver a policy upon payment of the balance of the first premium and the offer is refused, the Company will return said sum to the applicant upon demand with surrender of this receipt.

"Third: This receipt is not transferable and will not be valid for any greater ·sum than the sum declared by the applicant in his application to have been paid by him; nor will it be valid for any purpose if any erasures or additions have been made in the printed form.

"(Soliciting Agent must sign here) ————————

"Notice.—This receipt is not valid for any premium for the insurance applied for except the first premium thereon, which in no event shall exceed one annual premium for such insurance, together with the premium for preliminary term insurance, if any.
(Over)"

On the reverse side is the following:

"Agreement Contained in Application .

"It is mutually agreed as follows:  1. That the insurance hereby applied for shall not go into force unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician or practitioner since his medical examination, and thereupon the policy shall be deemed to have taken effect as of the date specified under 3 above; provided, however, that if the applicant, at the time of making this application, pays the soliciting agent in cash the full amount of the first premium for the insurance hereby applied for, and so declares in this application and receives from the soliciting agent a receipt therefor on the form attached as a coupon to this application and corresponding in date and number therewith, and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount hereby applied for, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not.  2. That the soliciting agent is not authorized to collect any premium for the insurance

hereby applied for except the first premium thereon, which in no event shall exceed one annual premium for such insurance, together with the premium for preliminary term insurance, if any, and that a receipt on the form attached as a coupon to this application and corresponding in date and number therewith is the only receipt the soliciting agent is authorized to give for any payment made hereunder before the delivery of the policy. 3. That only the President, a Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither of them is authorized to accept risks or to pass upon insurability. 4. That by receiving and accepting said policy, any additions or amendments hereto which the Company may make and refer to under 9 above entitled 'Additions or Amendments' are hereby ratified."

The above quoted provision also appears in the body of the application. On the same day the insured was examined at Centralia by defendant's medical examiner.

The application and check were received at the St. Louis office. Defendant's records at that office show that the first premium was paid April 26. The check was deposited in a St. Louis bank in defendant's "suspense account" April 27 to await the action of the home office at New York on the application. April 29, the check was paid by the Centralia bank upon which it was drawn. On May 2, after the insured's check had been paid, the St. Louis office mailed the application, together with a letter from the insured dated April 23, to the home office at New York. The letter was a request that a trust agreement in favor of the beneficiary be attached to the policy. On May 12, the home office at New York approved the application and sent the policy together with the trust agreement to its St. Louis office (clearing house). A form letter accompanying the policy and trust agreement gave instructions that the policy was not to be delivered to defendant's agent until the trust agreement had been executed by insured unless the agent was reliable and it was necessary for him to have the policy to facilitate delivery, in which event the policy could be delivered to the agent for delivery to the insured upon execution of the trust agreement. The agent in this case was, as noted, the insured. The St. Louis office mailed the policy and trust agreement to insured on May 17. They were duly delivered to him by mail at Centralia, Illinois. The insured executed the trust agreement and returned it to the St. Louis office May 20, from whence it was forwarded to the home office. The St. Louis office record shows that on May 21 the insured was paid the agent's commission for writing the policy on his own life. On the same day the premium theretofore deposited and held in the "Suspense Account" was placed in defendant's general account.

It is to be noted that the agreement appearing in the application and on the detached receipt provides that in the event the first premium was paid to the soliciting agent at the time the application was signed and the insured received and retained a receipt therefor, and the applicant so declared in the application, upon acceptance and approval of the application by defendant the insurance was to be effective as of the date of the application.

Plaintiff's position is that the first premium, being paid by check, was not paid in cash and that therefore the alternate second provision appearing in the detached receipt requiring delivery of the policy to effectuate the contract, applies. It is further contended that delivery being essential, the policy was delivered to and received by insured at St. Louis, Missouri, when the St. Louis office deposited it in the mail—the mails being the insured's agent for that purpose. It is conceded that if delivery of the policy was not necessary to the consummation of the contract, the contract was complete when the defendant accepted insured's application at New York, with the result that the enforcement of the contract will be determined by the law of New York.

Was the first premium paid in cash? The insured stated that it was in his declaration to that effect appended to the application. No other motive or intention other than that it be treated and accepted as cash, appears for forwarding the check. It was cashed by defendant's St. Louis office before the application was forwarded to the home office for approval. It is the usual method of making cash payments. It is inconceivable that in the light of present day practices the giving of a check,

without restrictions relative to presentation for payment, would not be accepted and understood by the parties as a payment of cash. Practically no other method of making "cash" payments is used and when actual currency is used as a medium of payment the unusualness of such a course frequently arouses suspicion of the motive actuating the practice. Therefore, unless the authorities prevent, the evident intention of the parties to treat the check as cash, will be given effect.

In determining the place of contracting, the law of the forum is applied. Illinois Fuel Co. v. Mobile & Ohio Ry. Co., 319 Mo. 899, 8 S.W.2d 834, certiorari denied, 278 U.S. 640, 49 S.Ct. 34, 73 L.Ed. 555; O'Maley v. North Western Mut. Life Ins. Co., 231 Mo.App. 39, 95 S.W.2d 852, certiorari denied, 299 U.S. 585, 57 S.Ct. 110, 81 L.Ed. 431. Hence, this Court must apply the ruling of the highest court of Missouri if one has been announced on the subject. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

If the question was whether the giving of a check in itself would constitute payment of a debt regardless of whether the check was paid, an abundance of Missouri authority is available determining the question in the negative. State ex rel. Percy v. Cox, 325 Mo. 938, 30 S.W.2d 46; Newton Burial Park v. Davis, Mo.App., 78 S.W.2d 150; Turner v. New York Life Ins. Co., 8 Cir., 100 F.2d 193 and cases there cited.

But the question is not whether the giving of the check constituted payment of the premium but whether the check will answer the description of cash when given in the usual course of business and paid on presentation. The only Missouri authority approaching the subject is the case of Jacobs v. Omaha Life Ass'n., 146 Mo. 523, 48 S.W. 462, 466. There the contract contained this provision: "That the policy of insurance which may be issued under this application shall not be in force until the first payment thereon shall have been paid by me in cash to, and accepted by, the secretary of the Omaha Life Association, upon such policy of insurance, during my lifetime, and in good health."

Other pertinent facts are tersely set forth in the opinion as follows: "It appears from the evidence that the application for this policy was made by Jacobs on the 31st of May, 1894, to Dr. R. Trotter, who was at the time the soliciting agent of the association; that on that day Jacobs executed his note, payable to the said Trotter individually, for $41.60; that Trotter on the same day indorsed the note, had it discounted in bank, received the proceeds, gave Jacobs the company's receipt for the amount of the premium, reported the same as paid, forwarded the application to the company, received the policy from the company, and delivered it to Jacobs."

After brief analysis of the facts the Court said: "No credit was extended by the company, or its agent acting in its behalf, for the premium. * * * As between the company, its agent, and the insured, it was purely a cash transaction."

There can be no logical distinction in principle between a note made to an agent personally, upon which cash was immediately realized, and a check given to an agent upon which cash was realized upon presentation in the usual course of business. In other respects the facts in the case at bar and the Jacobs case are substantially the same. Here the St. Louis office, defendant's agent, received the check and deposited it in the bank. The check was paid, the agent mailed the application reciting that the premium had been paid in cash to the home office, the policy was issued, delivered and received. It would seem that the Jacobs case is ample authority for the conclusion that the transaction was a "cash transaction." If, however, the Jacobs case does not determine the question there is no Missouri authority extant and the rule announced by the Circuit Court of Appeals for this Circuit controls.

In New York Life Ins. Co. v. McCreary, 8 Cir., 60 F.2d 355, 357, that Court said: "* * * where the proceeds received by the agent on negotiation of a note payable to him individually are sufficient to pay that part of the premium due the company, the premium to all intents and purposes is actually paid in cash, as much as if the agent had received for the premium a check on a bank or an order on a third person which was paid on presentation." Citing New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986; Payne v. Mutual Life Ins. Co., 8 Cir., 141 F. 339; German American State Bank v. Mutual Benefit, Health & Accident Ass'n, 107 Neb. 124, 185 N.W. 313; Jacobs v. Omaha Life Ass'n., 146 Mo. 523, 48 S.W. 462; John Hancock Mutual Life Ins. Co. v. Schlink, 175 Ill. 284, 51 N.E. 795.

710

The first premium having been paid by the insured in cash at the time of the making and signing of the application, the insured having received from himself, as agent, a receipt therefor on the receipt form attached to the application, and having signed a declaration attached to the application to the effect that he had paid to the defendant the stated amount of the first premium in cash and that he held a receipt therefor on the receipt form detached from and corresponding in date and number with the application, the contract of insurance was effective and complete when the application was accepted by defendant. The latter act occurred at defendant's home office in New York. The contract must, therefore, be treated as a New York contract, to be enforced in accordance with the laws of that State. Illinois Fuel Co. v. Mobile & O. R. Co., 319 Mo. 899, 8 S.W.2d 834; Fields v. Equitable Life Assur. Soc., Mo.App., 118 S.W.2d 521; Lincoln Nat. Life Ins. Co. v. Hammer, 8 Cir., 41 F.2d 12, loc. cit. 19; Metropolitan Life Ins. Co. v. Cohen, 2 Cir., 96 F.2d 66.

The form letter from the home office to defendant's St. Louis office directing that the policy should not be delivered to the agent (there was no soliciting agent in this instance) until the authority for the trust arrangement was signed unless the agent was reliable and needed the policy to effect delivery is of no importance in view of the conclusion reached respecting the time and place when the contract was completed. If, as demonstrated heretofore, the contract had become a complete and binding agreement before the letter was written, there could be no change in that situation resulting from the directions contained in the letter. The letter in fact did not relate to the contract of insurance. It referred only to the special arrangement fixing the manner in which the indemnity should be paid. The insured had specified his wife as beneficiary in the application but at the same time had written a letter requesting that a trust fund be established with the proceeds of the policy for her benefit. In view of these conflicting requests the insurer had designated the insured's estate as the beneficiary in the policy and had prepared the trust agreement which was to be attached to the policy in accordance with insured's letter. In order that the policy, when delivered, should have the executed trust agreement attached, it was no doubt thought desirable that the policy not be delivered until the agreement had actually been signed. The precaution was not deemed necessary by the St. Louis office and was not followed, therefore the letter is of little consequence. Furthermore, the execution of the trust agreement fixing the manner of payment was not necessary to the validity of the contract, a proper beneficiary having been named. If the letter is of any significance it would appear to further demonstrate that the insurer considered the insurance in force upon acceptance of the application and had designated insured's estate as beneficiary in order that there should be a proper beneficiary to whom the amount of the policy could be paid in the event the death of the insured occurred before the trust agreement was executed and the policy delivered.

Since it is conceded that under the law of New York the provision of the policy relating to double indemnity excluding liability when death results from suicide, sane or insane, is valid and enforceable, and since it is admitted that the death of the insured in this case was suicidal, there can be no recovery and defendant's motion for summary judgment must be sustained.

Counsel may submit formal judgment.