## ALOE v. FIDELITY MUTUAL LIFE ASSOCIATION, Appellant.

164      675
e97a   4455
97a   1457
j97a   4459
98a   3159
98a   3484

### In Banc, February 20, 1900.*

1. **Assessment Insurance Companies:** MISREPRESENTATION: ACTS OF 1874 AND 1887. Section 5869, Revised Statutes 1889 (same as section 10, Act of 1887) exempts insurance companies on the assessment plan from the operation of the Act of 1874, which provided that no misrepresentation in obtaining an insurance policy should be deemed material or render it void unless the matter misrepresented actually contributed to the death. Under the exemption of the Act of 1887 (section 5869, Revised Statutes 1889), the misrepresentation will avoid an assessment policy whether or not material to the risk and death.

*Held* by VALLIANT, J., in a separate opinion, that section 5869, Revised Statutes 1889, did not exempt assessment insurance companies from the operation of the Act of 1874, which provided that misrepresentations in the application for life insurance should not affect the validity of the policy unless these misrepresentations were material to the risk or were concerning matters that contributed to insured's death, and that that act is still operative against assessment insurance companies as well as old line ones.

*NOTE.—The opinion in this case was delivered to the reporter January 15, 1902.

2. ———: CARRYING STATUTE INTO REVISION: EFFECT. The carrying of a session act into the Revised Statutes does not change its effect; nor does its mere arrangement or location by the revisers make it a part of the statutes with which it is grouped, so as to qualify its meaning.

3. ———: CHARACTER NOT DETERMINED BY LICENSE OR NAME, BUT BY POLICY. The fact that an insurance company was chartered by another State as an assessment company, and was licensed to do business in this State under its laws as an assessment company, does not make it such, nor in anywise change its character or status under the Missouri law. Nor is the liability of the company in anywise affected by its name. That is determined by the character of its contracts of insurance, and by those contracts the law places the company in its proper class, and determines whether or not it is an assessment company.

4. ———: FIXED POLICY: FIXED PREMIUM. The policy issued by an "insurance company on the assessment plan" was for the fixed sum of $5,000, and its payment in no manner or degree depended upon the collection of an assessment upon persons holding similar policies, but was expressly made payable in consideration of the payment by the assured of the fixed sum of $69.10 for the mortality fund, $16.35 for the equation fund, and $20 for the expense fund on or before November 24, of each year, or in lieu thereof, of the payment of $27.95 upon the twenty-fourth days of November, February, May and August, which means an annual premium of $105.45, or a quarterly premium of $27.95, and the company agrees, in case of his death, to pay the insured's beneficiary $5,000. *Held*, this company was not an insurance company on the assessment plan, but an old-line company. And, hence, could not interpose as a defense to a suit on the policy that the application contained representations which were false, although not material to the risk. Nor is it any the less an old-line company because of the fact that the policy contains a clause in reference to its mortality and equation funds, to the effect that if experience shows, with the mortality tables as a guide, that the company has not charged the insured enough premium, it may increase it at any time so as to keep the company solvent.

5. ———: OLD-LINE COMPANIES: MISREPRESENTATIONS. If the misrepresentations were not material to the risk, or the matters misrepresented had nothing to do with the death of the insured, an old-line company can not avoid the payment of its policy on account of such misrepresentations.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flit-craft*, Judge.

AFFIRMED.

*Wm. C. & Jas. C. Jones* for appellant; *W. S. Campbell* of counsel.

(1) Whether the misrepresentation act applies to assessment companies, is no longer an open question in this State. Lord Caerns said: "I think that with regard to statutes. . . . . . . . . . it is desirable, not so much that the principle of the decision should be capable at all times of justification, as that the law should be settled, and should, when once settled, be maintained without any danger of vacillation or uncertainty." Sutherland on Constr. of Stats., sec. 394. In the case of Aloe v. Mutual Reserve, 147 Mo. 575, after citing numerous decisions holding that the misrepresentation act did not apply to assessment associations, BURGESS, J., says: "That case (Hanford v. Assn., 122 Mo. 50) must now be considered as the settled law of this State." In the same volume of the Supreme Court reports (Toomey v. Supreme Lodge, 147 Mo. 137), MARSHALL, J., held that it was the duty of this court to enforce the distinction created by the Legislature and follow the Hanford case, even holding that "it is not the province of this court to say whether the distinction was the result of design or oversight." Baker v. Lorillard, 4 N. Y. 261; Sutherland on Stat. Const., secs. 313, 319; Bates v. Relyea, 23 Wend. 336; Black on Stat. Const., p. 375. (2) Questions long settled, frequently followed and universally acquiesced in, should not be set aside. It is worthy of comment that the learned judge who wrote the divisional opinion has overlooked a number of cases in which the rule of the Hanford case has been followed,

and instead of this court having followed the Hanford case three times (only) the rule of that case has been reannounced and followed by this court in no less than nine well-considered cases: Whitmore v. Supreme Lodge, 100 Mo. 36; Hanford v. Mass. Ben. Assn., 122 Mo. 50; Jacobs v. Omaha Life Assn., 142 Mo. 59; Haynie v. Knights Templar, 139 Mo. 416; Jacobs v. Omaha Life Assn. (second appeal), 146 Mo. 523; N. W. Masonic Aid Assn. v. Waddill, 138 Mo. 628; Aloe v. Mut. Res. Fund Life Assn., 147 Mo. 561; Toomey v. Supreme Lodge K. of P., 147 Mo. 129; Dobyns v. Bay State Assn., 144 Mo. 103.   And by the Courts of Appeals in the following cases: Sparks v. Knights Templar, 61 Mo. App. 109; Theobald v. Supreme Lodge, 59 Mo. App. 87; Richards v. Ins. Co., 68 Mo. App. 585; Thassler v. Assn., 67 Mo. App. 509. Sutherland on Stat. Const., sec. 307; Black on Intr. of Laws, p. 215; Bishop on Written Laws (Statutory Crimes), sec. 104a; Endlich, Stat. Intr., sec. 357; Ross v. Railroad, 111 Mo. 18; Venable v. Wabash, 112 Mo. 125; Scanlon v. Childs, 33 Wis. 663.

*Noble & Shields* for respondent.

(1)   The law of Pennsylvania applies to this policy. Hermany v. Fid. Ins. Co., 151 Pa. St. 17; Fid. Mut. Life Ass'n v. Ficklin, 74 Md. 172; Railroad v. Gebhard, 109 U. S. 527; Penn. Mut. Life Ins. Co. v. Mechanics', etc., Co., 72 Fed. 413; s. c., 73 Fed. 653.   (2)   The policy sued on is not an assessment policy.   State ex rel. v. Monitor, etc., Ass'n, 42 Ohio St. 555; Joyce on Ins., secs. 1083 and 1287; Hanford v. Mass. Ben. Ass'n, 122 Mo. 59; Thassler v. Mut. Life Ass'n, 67 Mo. App. 505; Jacobs v. Omaha Life Ass'n, 142 Mo. 49; Dobyns v. Bay State, etc., Ass'n, 144 Mo. 110; State ex rel. v. Benefit Ass'n, 6 Mo. App. 163; Toomey v. Supreme Lodge, 74 Mo. App. 507; Com. v. Weatherbee, 105

Mass. 10. (3) The answers in the applications are not warranties. Tesson v. Atl. etc., Ins. Co., 40 Mo. 33; s. c. 50 Mo. 112; Renshaw v. Mo. St. Mut., 103 Mo. 604; Hoffman v. Mon. Co., 56 Mo. App. 308; Ethington v. Dwelling House, etc., 55 Mo. App. 129; 1 Joyce on Ins., secs. 186, 211, 222, 1890; Am. Life Ins. Co. v. Day, 39 N. J. Law, 89; Price v. Phoenix Ins. Co., 17 Minn. 512; Campbell v. N. E. Mut. Life, 98 Mass. 391; Brinck v. Merchants Ins. Co., 49 Vt. 457; Miller v. Mut. B. & L. Ins. Co., 31 Iowa 22; Rockingham v. Mut. Fire Ins. Co., 52 N. H. 587; Causol v. Minn. Ins. Co., 31 Minn. 17; Mouler v. Life Ins. Co., 111 U. S. 341; N. W. Mut. Life Ins. Co. v. Wood, 54 Kan. 663; Rogers v. Phoenix Ins. Co., 121 Ind. 570; Penn. Mut. Life Ins. Co. v. Wiler, 100 Ind. 92; Ala. Gold Ins. Co. v. Johnson, 80 Ala. 467; Kettenbock v. Omaha Life Assn., 49 Neb. 846, 69 N. W. 135; Schwartzbach v. Ohio Valley, etc., 25 W. Va. 652; Reynolds v. Commerce Fire Co., 47 N. Y. 597; Hanford v. Mass. Ben., 122 Mo. 50; Reed v. Piedmont, 58 Mo. 421; Loehner v. Ins. Co., 17 Mo. 247; Linz v. Mass. Mutual, 8 Mo. App. 363; Mers v. Life Ins. Co., 68 Mo. 127; Ramer v. Ins. Co., 70 Mo. App. 47; Jeffries v. Ins. Co., 22 Wall. (89 U. S.) 47; Aetna Life v. France, 91 U. S. 510; Whitmore Case, 100 Mo. 36; Sparks Case, 61 Mo. App. 109. (4) The answers are not material as a matter of law. McArthur on Marine Ins., p. 5; 2 Joyce on Ins., secs. 1849, 1883, 1884, 1892, 1898, 1910, 1914, 1915, 1934; Clason v. Smith, 3 Wash. (C. C.) 156; Flinn v. Headlong, Barn & C., 7 L. J. (K. B.) 307; Fitch v. Am. Popular Ins. Co., 59 N. Y. 557; Hampden v. Fire Ins. Co., 4 R. I. 159; Fisher v. Crescent Ins. Co., 33 Fed. 449; Delliber v. Life Ins. Co., 69 N. Y. 256. (5) The answers in application complained of were not material to the risk and did not mislead defendant. 1 Bacon on

Benefit Soc., secs. 230a, 234; Brown v. Ins. Co., 65 Mich. 306; Ross v. Bradshaw, 1 W. Bl. 312; Morrison v. Ins. Co., 59 Wis. 170; French v. Assn., 111 N. C. 391; Hann v. Nat. Union, 56 N. W. 834; Assn. v. Reutlinger, 25 S. W. 835; Delliber v. Ins. Co., 69 N. Y. 256; Ins. Co. Trefz, 104 U. S. 197.

*Wm. C. & Jas. C. Jones* for appellant on motion for rehearing.

The case was tried below upon the theory that the defendant's contract was an assessment contract. The lower court so held on demurrer to the answer, and the plaintiff acquiesced in this ruling and saved no exception to the court's action in overruling its demurrer—indeed, it pleaded over, in effect conceding that the defendant was an assessment company and its contract an assessment contract, but alleged certain other grounds why the defendant was liable, notwithstanding it was an assessment company and its contract of that class. This being the state of the pleadings and the court having tried the case below upon the theory that the defendant and its contract was of the assessment class, we submit that all that the appellant should have done—indeed, all that it properly would have been permitted to do in the trial court, was to plead such facts as under the law pertaining to assessment companies exempted it from liability. Under this law—that is, the law pertaining to assessment companies and assessment contracts (as then and now construed by this court), it was entirely sufficient and an absolute defense if the plaintiff pleaded and proved a breach of warranty of an immaterial matter, or concerning a matter which did not and could not contribute to the death. The appellant, and the respondent as well, was bound to try the case in accordance with the construction which the lower court had

placed upon the contract. In other words, when the lower court had once indicated by appropriate action on the pleadings that the contract was governed by the assessment law, it was not only the defendant's privilege, but it was his duty to abide by this ruling, and try its case according to the law as thus laid down. Melroy v. Knights of Honor, 28 Mo. App. 475.

MARSHALL, J.—I. I concurred in the opinion, in this case, in Division One of this court, upon the theory that the proviso, in section 5869, Revised Statutes 1889, was only intended to exempt assessment companies from the operation of all laws relating to the Insurance Department of the State except such requirements thereof as were especially enumerated in the foregoing part of that section 5869, and that it was not intended by that proviso to exempt assessment companies from the Act of 1874 (Laws 1874, p. 89), which required a misrepresentation in obtaining a policy to relate to a matter which "actually contributed to the contingency or event on which the policy is to become due and payable," or in other words, that the misrepresentation was material to the risk and death. Since so concurring, the case has been reargued and exhaustively briefed by counsel, and in consequence, I have made a personal investigation of the question, with the result that I am now of opinion that section 5869, Revised Statutes 1889 (which is section 10 of the Act of 1887, carried literally into the Revised Statutes of 1889), intended to bring assessment companies, domestic and foreign, under the supervision of the Insurance Department of the State only so far as that section specifies, but that the proviso was intended to leave assessment companies liable only as the Act of 1887 provided they should be liable, and not to subject such assessment companies *"to any other provisions or requirements of the general insurance laws of the State except as distinctly herein set forth."*

My reasons, briefly stated, for so changing my opinion are those: Section 5869, Revised Statutes 1889, is a part of article 3 of chapter 89, Revised Statutes 1889, but the whole of that article is but carrying of the Act of 1887 into the Revised Statutes, with the exception that sections 6, 12 and 13 of the Act of 1887, were amended in the revision of the statutes in 1889, and carried into these Revised Statutes, as sections 5865, 5871 and 5872, but such amendments do not change the general purpose of the Act of 1887, nor do they bear at all upon the question now under consideration, so that it is in the light of the Act of 1887, and without regard to the place of that act in the Revised Statutes of 1889 given to it by the revisers of the general statutes of the State, as article 3 of chapter 89, that this question must be decided.

Prior to 1874 the statutes of Missouri recognized three kinds of insurance companies, stock companies, mutual companies, and stock and mutual companies, the general nature of which is well understood, but one purpose of which was to make a profit for the promoters, and one feature of which was the payment of fixed premiums, at stated times, by the insured, and the payment of a sum certain by the company to the beneficiary named in the policy, upon the death of the insured. For the purposes of this case it is not necessary to refer to fraternal beneficial organizations, where the insurance feature is a mere incident to the fraternal purpose. This being the condition of the law, the Act of 1874 was passed, by which it was provided that no misrepresentation in obtaining a policy of insurance should be deemed material or render the policy void, unless the matter misrepresented actually contributed to the death, and that no defense based upon such misrepresentation should be valid unless the defendant deposited the premiums received on the policy, with six per cent interest thereon, in court, before the trial.

This act was general, and was intended to apply to all companies, of every character, not then or thereafter specially exempted from its operation, which were then in existence or which might thereafter be authorized by the laws of this State. The law was intended to operate *in presenti* and *in futuro,* until altered, amended or repealed. At that time insurance companies on the assessment plan were not authorized or recognized by the laws of Missouri. Such companies organized under the laws of other States might do business in Missouri, without let or hindrance by the Insurance Department of the State, and hence, without proper inspection as to solvency to protect our citizens. Therefore, the Act of 1887 was passed permitting the organization in this State of insurance companies on the assessment plan, and permitting such companies organized under the laws of other States to do business in this State upon the terms stated in that act, and the act carried with it an emergency clause, which recited that there was no law authorizing such companies to do business in this State and therefore the act should take effect at once, instead of waiting the constitutional time of ninety days after the adjournment of that session of the General Assembly.

Ever since the adoption of the Constitution of 1865, it has been the organic law of Missouri that all private corporations must be organized under the general laws enacted by the General Assembly. The Act of 1887 is a general law. It is entitled: "An Act to provide for the incorporation and regulation of associations, societies and companies doing a life or casualty insurance business on the assessment plan." It is intended to define assessment insurance companies, prescribe their duties and powers and fix their responsibilities. By section 10 of the act it brings such companies under the power of the Insurance Department so far as it relates to "visitation and ex-

amination," and expressly brings such foreign companies within the provisions of section 6013, R. S. 1879, which require the having an agent in this State on whom process may be served. Such companies, therefore, are subject to the provisions of the Act of 1874, relating to representations material to the risk, unless they are specially exempted from the operation of that law. The proviso contained in section 10 of the Act of 1887 is the special exemption relied on. It is as follows: "Provided always, that nothing herein contained shall subject any corporation doing business under this act to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth." At first, I was of the opinion that this proviso being embraced in the same section that brought such companies within the power of the Insurance Department as to "visitation and examination," was intended only to exempt those companies from any other power of the Insurance Department; in other words, that the proviso was limited to its antecedents in the same section, and was not broad enough to exempt them from the other general insurance laws of the State, e. g., the Act of 1874. But upon fuller argument, investigation and examination, I have concluded that the proviso was intended to make such companies liable only as specified in the Act of 1887, which authorized their creation and existence, and that limiting the meaning of the proviso to its antecedents in the same section is too narrow a construction, and was not so intended by the lawmakers. It is true, there are other features of the law relating to the Insurance Department, an exemption from which would be beneficial to the company, e. g., the requirement that they shall have accumulated at least $100,000, which shall be invested under the supervision of that department. But the language of the proviso is too broad and sweeping and general to be limited to

referring only to this and other regulations as to the Insurance Department, for it exempts such companies from "any other provisions or requirements of the *general insurance laws of this State,* except as distinctly herein set forth," thereby including in the exemption *any* general insurance law of the State, and to emphasize the extent of the meaning of the section it adds, "except as distinctly herein set forth."    To limit this to the law applicable to the Insurance Department alone, necessitates reading into the proviso the words, "relating to the Insurance Department," so as to make the proviso read, "of the general insurance laws of this State relating to the Insurance Department."    This would work a material limitation upon the words of the statute which relate to the general insurance laws of the State, of which there are many, e. g., the Act of 1874, outside of those relating to the Insurance Department.

In Hanford v. Ins. Co., 122 Mo. 50; Haynie v. Ins. Co., 139 Mo. 416; and Jacobs v. Ins. Co., 142 Mo. 49, this proviso was construed to exempt such companies from the provisions and requirements of all the general insurance laws of the State, not distinctly set forth in the act (not limited to section 10 of the act), and this view was followed in Aloe v. Ins. Co., 147 Mo. 561, and in all those cases the Act of 1887 was treated as a complete code of laws by which the powers, rights, duties and liabilities of assessment insurance companies were to be measured.    And I now think, for the reasons stated, that those cases put the proper construction upon the Act of 1887, and particularly upon the proviso in section 10 of that act.    I reach the conclusion reluctantly, for I have very little patience with an insurance company that accepts premiums as long as a man lives and tries to avoid paying the policy to those he died thinking he had left fully provided for, for reasons which never increased the risk or caused the death.    Such conduct offends my sense of morality, and wherever it is possible to make the

legal liability the same as the moral liability I have done so, and shall continue to do so. For these reasons, I regret having been compelled to change my opinion as to the legal liability of assessment companies under the Act of 1874.

II. Closer investigation, however, has led me to the conclusion that this defendant can not be considered an insurance company on the assessment plan, in the light of the Act of 1887, and of the later decisions in this State, as to what constitutes an assessment company under our laws, and the fact that it was chartered by the State of Pennsylvania as an assessment company, and was licensed to do business in this State by the Superintendent of the Insurance Department, as an assessment company, does not change its character or status under our law.

In Jacobs v. Omaha Life Ins. Co., 142 Mo. 49, MACFARLANE, J., following what was said by BLACK, J., in Hanford v. Ins. Co., 122 Mo. 50, as to what constitutes an assessment company, said: "An examination of the contract itself, and of the application which is made a part of it, fails entirely to show that the 'benefit is in any manner or degree, dependent upon the collection of an assessment upon persons holding similar contracts,'" but as all the policy was not then before the court, the case was remanded for it to be ascertained whether the defendant was an assessment company or not. Upon second appeal of the case (146 Mo. 523), BRACE, J., held, when the whole facts were before the court, that the defendant was not an assessment company because the payment of the policy or benefit was not in any manner or degree dependent upon the collection of an assessment upon persons holding similar policies, but that it was a old-line insurance company, because the payment of the policy was made dependent solely upon funds raised by fixed premiums to be paid at stated periods by the insured. The same tests were applied in Toomey v. Knights of Pythias, 147 Mo. 129, and the distinctions under our statute between

the several classes of insurance companies were pointed out. And in Logan v. Ins. Co., 146 Mo. 114, it was held to be immaterial what name a company may adopt, its liability is determined by the character of its contracts of insurance, and the law then places the company in its proper class.

Tested by the statute and these cases, the defendant company is not an assessment company, but a regular or old-line company, for the policy it issued in this case is for a fixed sum of five thousand dollars, and the payment thereon is in no manner or degree dependent upon the collection of an assessment upon persons holding similar policies, but is expressly made payable in consideration of the payment by the assured of the fixed sum of "sixty-nine and ten one-hundredths dollars for the mortality fund, sixteen and thirty-five one-hundredths dollars for the equation fund, and twenty dollars for the expense fund, on or before the twenty-fourth day of November in each year, or, in lieu thereof, of the payment of twenty-seven and ninety-five one-hundredths dollars upon the twenty-fourth day of the months of November, February, May and August in each year during the continuance of this contract." That is, the insured agreed to pay an annual premium of $105.45 or a quarterly premium of $27.95, and the company agreed to pay his beneficiary the sum of five thousand dollars. Here there are fixed premiums, to be paid at stated intervals, and a fixed amount to be paid by the company, and the payment of that amount is in no way dependent upon the collection of an assessment upon persons holding similar policies. This places the company in the class of a regular life insurance company.

The character of the defendant is not altered by the conditions of the policy as to the mortality fund or the equation fund. These conditions are as follows:

## "MORTALITY FUND.

"Eighth.   The amount to be paid by the member into the mortality fund, as specified in the body of this policy, is based on the adjusted mortality experience of life insurance companies for age of entry, and during the first five years from the date hereof, any saving between the mortality assumed and that actually experienced, shall belong to the general fund of the association, and thereafter it shall belong to the member, and shall be paid to him as provided in the body of this policy. Any deficiency in the mortality fund due to the advantage of the member shall be made good out of the equation fund.

## "EQUATION FUND.

"Ninth.   The member shall pay into the equation fund (which shall be deemed and regarded as a surplus of the association) an amount sufficient to cover his share of the increasing mortality cost due to advancing age, and if the amount specified in the body of this policy for said purpose, based on the tabulated experience of life insurance companies, shall be found by the actuary to be insufficient; or, if the mortality among the members of the State in which the insured resides exceed that of the American Table of Mortality experience, thus causing a deficiency in his contributions to the mortality fund, said members being liable for such excess; or, if the State in which the member resides shall impose any tax or license not contemplated in the construction of the association's rates, then, in either event, the actuary shall determine the amount of deficiency properly chargeable to the member, which amount in either event, the member shall pay to the treasurer of the association within thirty days from the date of notice thereof."

The condition as to the mortality fund expressly states that the premiums to be paid are based upon the mortality ex-

perience of life insurance companies, and that if the amount specified in the policy is not sufficient, the company reserves the right to increase the premium, and also expressly states that the equation fund is a surplus calculated upon like experience, but in this event and in no event is the amount to be paid by the company made to depend in any way upon the collection of assessments upon persons holding similar policies. In other words, each contract with each insurer is a separate contract unto itself, wholly independent of any other contract made with any other insurer. Translated into plain words, the contract is that the company will pay five thousand dollars to the beneficiary of the insured at his death; provided, every year or every quarter during his life the insured will pay the company a fixed premium; provided, further, that if experience shows that the company has not charged the insured enough premium it may increase it at any time so as to keep the company solvent. Such a contract lacks the essential elements to bring the defendant company within the meaning of an assessment company under our laws, and therefore the Act of 1874 (now sec. 5849, Revised Statutes 1889), applies to this case. There can be no doubt that the alleged misrepresentation in this case was not material to the risk, and the matters said to have been misrepresented had nothing to do with the death and there is no pretense that they did, and moreover, the defendant has not offered to pay into the registry of the court the premiums paid, with interest, as the statute requires before such a defense can be held valid, and, therefore, neither on the pleadings nor the proofs has there been shown any defense to the plaintiff's claim. The judgment of the circuit court was therefore for the right party and should be affirmed.

Vol 164 mo—44

The foregoing opinion is adopted as the opinion of the court. *Gantt*, C. J., *Burgess*, and *Brace*, JJ., concur; *Valliant* and *Robinson*, JJ., dissent from this opinion but concur in affirming the judgment of the circuit court for the reasons stated in an opinion by *Valliant*, J., heretofore rendered in Division One and refiled herein; *Sherwood*, J., not sitting.

### SEPARATE OPINION.

(Filed as a majority opinion in Division One, and afterwards as a separate opinion In Banc.)

VALLIANT, J.—This is a suit on a life insurance policy issued by defendant on the life of plaintiff's husband. The issues made by the pleadings are thus stated in appellant's brief:

"The petition alleged the issuance of the policy to Albert S. Aloe, the performance of all the conditions incumbent on insured, the insured's death, the presentment of proofs of death and defendant's refusal to pay and prayed for judgment.

"The answer admitted the plaintiff's case, and then pleaded affirmatively, that Aloe made false answers in the application for the insurance, that said false answers constituted a breach of warranty, a material misrepresentation, a concealment and a fraud upon defendant, inducing the issue of the certificate. The false answers set up by defendant related to prior rejections of insured for life insurance; unfavorable opinions of physicians in connection therewith; medical advice and consultation and attendance by physicians within ten years prior to the application to defendant, and other insurance not disclosed by Aloe in his application.

"Plaintiff's reply denied the new matter in defendant's answer and especially set up that Aloe's answers were made in

good faith and were not material to the risk; that the contract was controlled by the laws of Pennsylvania, and that by the statutes of that State the answers pleaded by defendant were misrepresentations as contradistinguished from warranties and did not, by reason of the statute, avoid the policy unless the answers were material to the risk or were made in bad faith."

The defendant moved the court to strike out that part of the reply which set up the laws of Pennsylvania as controlling the contract; which motion was overruled and defendant excepted. The case came on for trial before the court and jury, defendants assumed the burden of proof and was accorded the opening and closing of the case.

The testimony on the part of defendant tended to show that defendant was chartered under the laws of Pennsylvania to do life insurance business on the assessment plan, and was duly licensed by the Insurance Department of Missouri to do life insurance business in this State on the assessment plan; that in his application for the policy Aloe agreed that every statement therein was material to the risk and warranted every statement and answer "to be full, complete and true" and that if found to be in any respect untrue the policy issued upon it was to be null and void; the policy referred to the application as a part of the consideration for the contract and made it a part of itself. The testimony for defendant also tended to show that in several particulars mentioned in the answer, as above epitomized, the answers to questions in the application were untrue.

There was no averment in defendant's answer, nor was there any proof tending to show, that the alleged false answers in the application related to anything that caused or contributed to cause the death of the insured. The position of the defendant at the trial was, and now here is, that the statements

and answers to questions in the application were agreed to be material and warranted to be true, and the policy issued on the faith of the warranty; that in point of fact it turns out they were not true, the warranty fails, and the policy is void. To quote the language of defendant's counsel in a colloquy during the trial he "expressly disclaims that he has shown or attempted to show that albumen in the urine was an incurable disease. The defenses in this case are simply false answers in the application. No question is raised as to the physical condition of Mr. Aloe at the time." The learned counsel relied on the letter of the contract, and on a construction of the proviso to section 5869, Revised Statutes 1889, exempting corporations doing a life insurance business on the assessment plan from the requirement of the general insurance laws of the State, which construction would render the provisions of sections 5849 and 5850 inapplicable to the policy in question. Counsel for plaintiff make, in their brief, a forcible argument to show that notwithstanding the defendant was an assessment company, yet the policy in question was not on the assessment plan. But the view we take of the law will render it unnecessary for us to follow that argument. It will also be unnecessary for us to decide any of the questions arising out of the conduct of the trial, since, in this view, the case must be adjudged on the face of the pleadings.

The petition and answer agree that the application was made and the policy delivered in Missouri. It is therefore a Missouri contract, and governed by our laws. Section 5849, Revised Statutes 1889: "No misrepresentations made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy

is to become due and payable, and whether it so contributed in any case shall be a question for the jury." The event on which this policy was to become due was the death of the plaintiff's husband. Therefore, if the provisions of that statute are to govern, no misrepresentation, of whatsoever character, made in obtaining the policy, is to be deemed material, or render the policy void, unless the matter misrepresented actually contributed to cause the death of plaintiff's husband. There was no averment or proof to that effect. On the contrary, any intention on the part of defendant to do so was actually disclaimed. And, even if there had been any such purpose, such defense would not have been heard, if this statute is to govern, because section 5850 requires, as a condition precedent to that defense, that the defendant deposit in court for the benefit of the plaintiff the premiums received on the policy. In Hanford v. Association, 122 Mo. 50, this court, per BLACK, J., protesting, "We are at a loss to see any good reason why the two sections concerning misrepresentations should be applied to what are denominated old-line companies, and not to these assessment plan companies," nevertheless felt constrained to hold that the proviso to section 5869 did exempt policies issued on the assessment plan from the operation of the two sections in question. And in Haynie v. Indemnity Co., 139 Mo. 416, that ruling was followed; still protesting that there was no reason for it, except the letter of the statute. In Jacobs v. Association, 142 Mo. 49, the Hanford and Haynie decisions were followed without comment. And, very recently, in Aloe v. Mutual Reserve Life Association, 147 Mo. 561, these three decisions were cited and followed. Nevertheless, after a careful study of the statute, we are forced to the conclusion that the construction placed on the proviso in question in Hanford v. Association, supra, was erroneous, and gave it an effect which the lawmakers

never intended, and, although we have followed it three times, yet we ought not to follow it again.    That proviso relates only to the extent to which the corporation itself shall be held subject to the supervision of the Superintendent of Insurance, and to the general provisions of the law governing the conduct of insurance companies in this State. That this is the correct construction of the proviso appears not only from the context in which we find it, but from the history of our statutes on the subject, and the manifest intention of the Legislature in enacting the statute regarding misrepresentations in applications for life insurance.    The section in which the proviso occurs (section 5869) treats of but one subject, and is in form but one complete sentence, from beginning to end, the proviso included. The subject is the supervision the superintendent of insurance is to have over the corporation which that act authorized to be formed, and the submission of the corporation to his jurisdiction.

When the Insurance Department was created by act of the Legislature in 1869, there were three kinds of domestic life insurance companies then recognized and authorized by our law—stock companies, mutual companies, and stock and mutual companies.    These companies were placed under the supervision of the Superintendent of Insurance, who was required to see that they complied with the law in all respects as to their organization and conduct of their business, and it was one of the requirements of the law that they should have at least $100,000 invested under that supervision before they could do business.    Foreign companies were admitted on similar terms.    At that time there was provision in our statute for the organization and incorporation of fraternal and benevolent societies, but no power was then given them to conduct

the life-insurance feature of their business, which is now so usual in such orders. In 1879 the General Assembly made two attempts to amend the benevolent and fraternal corporation law so as to confer on such organizations a qualified authority to insure the lives of their members for the benefit of their families, and at the same time remove such insurance from the supervision of the Superintendent of Insurance. But the two acts passed at that session seem to have so conflicted as to have left the Superintendent still charged with the duty of looking after the insurance business conducted by such societies. In State ex rel. v. Benevolent Society, 72 Mo. 146, it was held that a business of life insurance attempted to be conducted by an association organized under the fraternal society act was in effect a mutual life insurance business, within the meaning of the general insurance laws of the State, and that the defendant company had no authority in law to conduct such a business. That decision was rendered in 1880. In 1881 the Legislature, doubtless in the light of that decision, amended the Act of May 19, 1879, which had become section 974, Revised Statutes 1879, by striking out the proviso which had defeated the supposed intention of the original act; and under that amendment corporations organized for fraternal and benevolent purposes, were authorized, purely incidental to their main purpose, to provide means to assist the families and dependents of their deceased members, and were exempt from the operation of the general insurance laws of the State. It was never the purpose of that law, nor of the act to which it was an amendment, to authorize the organization of a corporation whose main object was to conduct a life insurance business, but only such as was intended in good faith to be a fraternal society, the insurance being only incidental to its fraternal purpose. The act even avoids the word "insurance" in

conferring the power, using instead the words "means where-with........to relieve and aid the families," etc.   But the desire to conduct the life insurance business without first ac-cumulating the minimum, $100,000, and submitting to the supervision of the Superintendent of Insurance and the other requirements of the Act of 1869, induced an attempt to per-vert the Act of 1881 in relation to fraternal societies into au-thority to form a life insurance company on the assessment plan, which the St. Louis Court of Appeals had no difficulty in seeing through and suppressing.   [State v. Brawner, 15 Mo. App. 597.]   Still it will be observed that there was nothing yet in our statutes that authorized any other kind of insurance company to become incorporated or to do business in this State, except the three kinds mentioned in the Act of 1869.   In 1887, the General Assembly passed an act entitled "An act to provide for incorporation and regulation of associations, socie-ties or companies doing a life or casualty insurance business on the assessment plan."   That act introduced a new class of insurance companies into our law, and provided for their regu-lation.   It was carried into the Revised Statutes of 1889, as article 3 of chapter 89.   But the carrying of a session act into the Revised Statutes does not change its effect; nor does its mere arrangement or location by the revisers make it a part of the statutes with which it is grouped, so as to qualify its meaning.   [St. Louis v. Alexander, 23 Mo. 509; State ex rel. v. Heidorn, 74 Mo. 410; Sec. 6607, R. S. 1889.]   This act, which seems to be designed, in a general way, to authorize the formation of companies to do the business of insurance on the plan similar to that that fraternal societies were authorized by the Act of 1881 to conduct the insurance feature of their bus-iness, yet makes a very material difference in the matter of supervision and regulation of the two classes of corporations;

the fraternal societies being at that time entirely independent of the Superintendent of Insurance, and the companies authorized by this act being in many important respects made subject to his supervising and controlling jurisdiction.   The fact of the existence of a class of corporations doing a business somewhat similar in kind, which was exempt from the control of the Insurance Department suggested to the lawmakers the necessity of being explicit on this point; and so it was provided that in certain particulars these companies should be under such supervision and control, and it was in that connection, and not otherwise, the proviso in question was added.

There was at the time this Act of 1887 was passed a separate article in the chapter on "Insurance" in the Revised Statutes of 1879, entitled "Article 4—General Provisions." That article contained many provisions applicable in terms to all classes of insurance companies—fire, marine, and life—regulating them in the general conduct of their corporate business, and directing how, should they become unworthy, they might be dissolved and wound up.   It is to one of the sections in that article (section 6013) that reference is made in the section to which the proviso now under discussion is added.   The effect of section 5869, with this proviso, is to say that those assessment companies shall make their reports to the superintendent and be subject to his visitation, as the general law provides in case of other life insurance companies; that foreign assessment companies shall have their resident agents, etc., as section 6013 requires; but that, except as in the act itself provided, those other general provisions shall not apply.   It is provided elsewhere in the act not only for supervision and control by the superintendent in certain particulars, but also that the companies, when they become unworthy, may be proceeded against by quo warranto, and wound up, as provided in the general insurance law for other insurance com-

panies. All these considerations go to show that it was the regulation of the conduct of the corporations themselves that the Legislature had in mind when they added this proviso. But sections 5849 and 5850, in reference to misrepresentations in obtaining a policy are not a part of the general insurance laws of the State; that is, they are not a part of those provisions of our statutes which, like those in article 4, just referred to, apply to the subject of insurance generally, or to insurance companies in general, but are a part of the law relating to life insurance only, and were not even originally enacted as a part of the life insurance statutes, but in a separate act. Misrepresentation in obtaining a fire insurance policy is not covered by those sections. Those two sections are now grouped with other statutes in the revision in the chapter entitled "Insurance," but they were passed by the General Assembly as a separate act and are entitled to be construed with that fact in mind. It was an act of three sections entitled "An Act in relation to misrepresentation in obtaining or securing life policies in insurance companies, and requiring defendants in actions brought on such policies to return the premiums received, and interest thereon, to the plaintiffs in certain cases;" approved March 23, 1874. The first two sections of the original act are now sections 5849 and 5850, Revised Statutes 1889, and the third is that the act take effect from and after its passage. So that when the Legislature had this subject in mind it was not complicated with any other subject. The act was to accomplish that purpose alone.

The object of the statute is plain and the evil it was intended to correct is also apparent. The General Assembly of this State has never enacted a law for the purpose of enabling a man to perpetrate a fraud and reap the benefit of it, nor was this act passed for such a purpose. But in its enactment the

General Assembly was endeavoring to prevent life insurance companies from taking advantage of men by inducing them to sign applications for policies binding themselves in such terms as in effect would in almost every instance defeat recovery against the company. In the negotiating of a contract of that kind, it is seldom that the individual is a match for the corporation. The application is voluminous in questions the applicant is required to answer, covering the period of his whole life and relating to subjects some of which are material and some trivial, but the absolute truth of all of which he is required to warrant, and if after he is dead and his widow asks pay of the policy, it should turn out that an answer to a question, whether it related to a matter that was material or immaterial, serious or trivial, was found to be untrue, the company could with impunity refuse payment. The application for the policy, in the case at bar, is a fair sample of those above commented on. Insurance companies, conducted by honorable men, doubtless sometimes use such applications with the confidence in their own integrity that they would not refuse payment if the untrue answer related to a trivial matter. But the policy of the law is not to leave the adjustment of the claim to the conscience of the debtor. It was to guard against the abuse of such advantage that the General Assembly passed this law in 1874. Now can we conceive that the General Assembly in 1887 intended, by this proviso that we are considering, to say that the Act of 1874 might remain in force as to one class of life policies, but should not attach to another? Is there anything in the nature of the case to suggest a reason for making a difference? Judge BLACK, in the Hanford case above cited, protested that there was no reason for it; and there is none.

The mischief that the Act of 1874 was intended to remove lurks as well in an application for a policy in the assessment

plan as in an application for an old-line policy.    An act of the Legislature is not to be so construed as to give it an unreasonable or arbitrary effect and out of harmony with a settled policy of the law, if it is fairly susceptible of a construction that accomplishes a rational purpose and leaves it in harmony with such policy.

Taking these statutes all together and reading them in their historical order we see that there is no justification in concluding that the General Assembly ever intended to impair the effect of the Act of 1874.    To construe the proviso to section 5869 as we have hereinabove construed it, that is, as relating to the organization of the corporations, the extent to which they shall be subject to the supervision of the Department of Insurance and under the superintendent's control, is a reasonable and natural construction and leaves it in harmony with the Act of 1874, which for twenty-five years has been the policy of our law on that subject.

Having reached this conclusion it follows that the decisions in Hanford v. Mass. Ben. Ass'n., 122 Mo. 50; Haynie v. Knights Tem. Indem. Co., 139 Mo. 416; Jacobs v. Omaha Life Ass'n, 142 Mo. 49; and Aloe v. Mut. Reserve Ass'n, 147 Mo. 561, in so far as they hold that the provisions of sections 5849 and 5850, Revised Statutes 1889, are inapplicable to life insurance policies on the assessment plan, ought to be overruled.

The defendant's answer having admitted the case stated in plaintiff's petition, and pleaded in avoidance only facts which, because of sections 5849 and 5850, Revised Statutes 1889, are not sufficient to preclude a recovery, the plaintiff is entitled to a judgment on the pleadings.

The circuit court did not take the view that we have herein expressed, but through a trial on a different theory reached the same result, therefore, regardless of the questions arising out

of that trial, there was no error in rendering the judgment rendered.

The judgment of the circuit court should be affirmed. *Marshall, J.,* concurs; *Brace, P. J.,* dissents; *Robinson, J.,* expressing no opinion; and the cause is transferred to Court in Banc.