JOHN W. WILLIAMS, Respondent, v. ST. LOUIS LIFE INSURANCE COMPANY, Appellant.

97   449|<br>h98  ¹486|

St. Louis Court of Appeals, December 23, 1902.

1. **Life Insurance: ASSESSMENT PLAN: NATURE OF POLICY: STATUTORY CONSTRUCTION.** Under the provisions of section 7901, Revised Statutes 1899, every contract of life insurance, whereby the benefit secured is in any manner or degree dependent upon the collection of any assessment upon any person holding similar contracts, is a contract of insurance on the assessment plan.

2. ———: ———: ———: ———. In the case at bar, when the policy of insurance was issued, its payment on the death of the insured did "in some manner or degree" depend upon the collection of an assessment upon the persons holding similar contracts; *held,* that the contract of insurance is on the assessment plan.

3. ———: ———: MISREPRESENTATION: WARRANTY. Any misrepresentation made by the applicant, to procure a policy of insurance on the assessment plan, and which is warranted to be true and enters into the contract of insurance, voids the policy.

4. ———: ———: ———: ———. An insured who signed the application and submitted to the medical examiner, and knew that a policy had been issued, will be conclusively presumed to know, when applying for other insurance, that she had existing insurance.

5. **Insurance Law: AMENDMENT: STATUTORY CONSTRUCTION.** The only amendment effected by the Act of 1897, being now, as amended, section 7910, Revised Statutes 1899, was to incorporate section 7896 (the suicide statute), 7890 (the misrepresentation statute) and 7891 (requiring a deposit of the premiums paid before a defense on the ground of misrepresentation can be made), of the general laws of the State into the section and to apply them to foreign insurance companies. doing business in this State on the assessment plan.

6. ———: ———: ASSESSMENT PLAN: POLICY OF THE LEGIS-
LATURE. And it was not the purpose of the Legislature to subject
domestic companies, doing business on the assessment plan, to other
general laws.

Appeal from St. Louis City Circuit Court.—*Hon. Selden
P. Spencer,* Judge.

REVERSED AND CERTIFIED TO THE SUPREME COURT.

*C. W. Rutledge* for appellant.

(1) The policy of insurance is an assessment con-
tract of a domestic company, and the representations
were warranted to be true and agreed if false would
avoid the contract. (2) The provisions of general in-
surance laws do not apply to such assessment contracts,
and misrepresentations warranted to be true avoid the
policy whether fraudulent or not, whether material as a
matter of fact or not, or whether of matters actually con-
tributing to the death or not. The "assessment plan"
insurance law is a complete and independent insurance
law of itself. Aloe v. Life Ins. Co., 164 Mo. 675; Elliott
v. Life Ins. Co., 163 Mo. 132; Hanford v. Mut. Ben.
Assn., 122 Mo. 50; Aloe v. Life Assn., 147 Mo. 561. (3)
Where positive evidence of the misrepresentations is
attempted to be disproved by negative evidence only,
such as the appearance of the insured to relatives,
friends or acquaintances, the appellate court will re-
verse the judgment without remanding the case for an-
other trial. Aloe v. Life Ass'n, 147 Mo. 561; Sparks v.
Knights Templars, 61 Mo. App. 109. (4) Levying an
assessment does not create the relation of debtor and
creditor between the policy-holder and the company, so
that the latter can enforce payment in an action at law.
Lehman v. Clark, 174 Ill. 279.

*J. H. Trembley* for respondent.

(1) The first question involved is not whether the
policy in question was issued by an assessment or an old

line company, but whether the policy as issued is an assessment or old line contract. Logan v. Ins. Co., 146 Mo. 114; Toomey v. Supreme Lodge, 147 Mo. 139. (2) Taking its various provisions into consideration, there can be no question but that it is as held by the trial court, an old line contract, and must be governed by the laws applicable to such policies. R. S. 1899, sec. 7901; Logan v. Ins. Co., supra; Toomey v. Supreme Lodge K. of P., supra; Jacobs v. Life Ass'n, 146 Mo. 523.

BLAND, P. J.—1. The petition is in the ordinary form to recover the sum of $1,000 on a policy of life insurance, dated May 26, 1898, issued by the defendant on the life of Cora Williams, for the benefit of and payable at her death to the plaintiff, who was her husband.

The answer admitted the issuance of the policy, the death of the insured, and that proofs of the loss had been furnished. It then pleaded affirmatively the following special defenses:

"2. That the policy as issued is an assessment contract and not an old line policy, and that there was fraud in the procurement of the policy in the following alleged particulars:

"(a) The assured fraudulently misrepresented in the application for the policy that there was no other insurance on her life, when, as a matter of fact, her life was then insured in the Metropolitan Life Insurance Company.

"(b) Plaintiff, or the assured, substituted some one for medical examination other than the assured.

"(c) In the medical examination part of the application for the policy, different, false and fraudulent statements and representations were made, which voided the policy.

"(d) The policy having become void and the assured having applied for reinstatement, plaintiff, or the assured, substituted some person other than the assured at the medical examination forming the basis of the reinstatement of the policy.

"(e) In the medical examination part of the policy on which the reinstatement was made, numerous fraudulent misrepresentations were made which voided the policy.

"(f) The policy having again become void, the assured, on April 26, 1899, applied for reinstatement, and in such application made various fraudulent misrepresentations concerning her health, etc., which voided the reinstated policy," and alleged that all of said representations were agreed to be warranties.

The reply was a general denial.

The petition alleged that the defendant is a corporation organized under the laws of this State with authority to issue policies of insurance on the stipulated premium plan.

The answer alleged that the defendant is an assessment company and the certificate of the insurance commissioner, read in evidence, shows that the defendant is authorized to do business as an assessment company and it is conceded by plaintiff that it is an assessment company.

The trial court held that the policy sued on is an old line policy and therefore subject to the general insurance laws of the State.

The policy on its face recites that it was issued "in consideration of the payment in advance of the first annual premium of $18.98 and of the annual payment in advance thereafter of a like amount, to be made on the 26th day of May in every year during the continuance of this policy." The policy, however, contains among others, the following conditions:

"Fourth. The insurance under this policy shall be that of 'non-participating term' during the first two years it shall be in force, and thereafter it shall be a 'whole-life participating' policy. The company agrees to set aside out of each annual premium paid hereon, after the second full policy year, the sum of two dollars and fifteen cents, and to hold the same as a reserve fund for the purpose of maintaining the emergency fund required by the laws of the State of Missouri. Any mor-

tality in excess of the American table of mortality shall be paid out of the emergency fund, and this policy, if in force, shall be liable for its share of any deficiency caused therein by such payment. Upon the determination by the board of directors of the amount of any such deficiency, it shall be deemed assessed and deferred premiums, and the policy-holder shall pay the same within thirty days after written notice to do so, or the company will accept from the policy-holder a premium note therefor, upon the condition that interest thereon is paid annually, in advance, at the rate of five per cent per annum; the amount of any such note, with accumulated interest, shall be a lien against this policy, and be deducted therefrom in any settlement thereunder; provided, that no deficiency in the emergency fund shall be chargeable to this policy so long as the reserve fund, above provided for is, with its accumulations, sufficient for its maintenance, as required by law.

"Fifth. When the policy has been in continuous force five or more years, and is still in force, the legal holder of this policy may, upon giving thirty days notice to the company of its intention to do so, surrender this policy and receive therefor ninety per cent of its pro rata share of the accumulations in the reserve fund, as determined by the board of directors, in any one of the following modes: In cash, paid up or extended insurance, or the company will loan not to exceed the cash surrender value.

"Sixth. This policy shall be entitled to share in the profits of the company, etc.

"Seventh. Insured may change beneficiary," etc.

Section 7901, Revised Statutes 1899, defines every contract of life insurance whereby the benefit secured is in any manner or degree dependent upon the collection of any assessment upon any person holding similar contracts, to be a contract of insurance on the assessment plan. It would be difficult to employ broader or more comprehensive language than is here employed to define a policy of insurance on the assessment plan and it seems to us that if authority is somewhere given in the

contract of insurance to the board of directors or other controlling authority, to levy assessments upon all the policy-holders of the company at any time when it may become necessary to pay death losses, or to provide a reserve fund for the purpose of meeting death losses to occur in the future that however infrequent it may be necessary to make such assessments, and although the business methods of the company may have been devised with a view of avoiding as far as practicable the necessity of making such assessments, yet if the power is reserved to make them if the necessity should arise, the policy should be classed as an assessment policy and the payment of a flat premium at stated periods should not take the policy out of the statutory definition of a policy on the assessment plan. Substantially this interpretation of the statute was made in Hanford v. Mass. Ben. Ass'n, 122 Mo. 50, where it was held that a policy which required a payment of a flat premium at stated periods but which also provided for an assessment, when called for by the board of directors, to make up a deficiency in the reserve fund, to be insurance on the assessment plan.

In Jacobs v. Life Association, 146 Mo. 523, the court, speaking of life insurance on the assessment plan, used the following language:

"The primary and controlling principle of the statute is that the benefit is to be paid out of a fund raised by assessment upon other persons holding similar contracts, by which they are made liable for the payment of such assessments. No scheme of life insurance can come within this principle and become insurance upon the assessment plan, unless somewhere along the line of its operations provision is made for such an assessment, and liability for its payment created. The right to have the assessment made must be given to the insured; the duty to make it must be imposed upon the corporation, and liability for its payment upon its members."

The Jacobs case was followed in the cases of Toomey v. Supreme Lodge K. of P., 147 Mo. 129, and McDonald v. Life Ass'n, 154 Mo. 618.

In the more recent case of Elliott v. Des Moines Life Ins. Co., 163 Mo. 132, a policy that provided for certain fixed premiums to be paid by the insured, but contained a safety clause that should the death rate exceed the rate estimated by the company that, after paying the reserve fund, the company might assess additional pro rata premiums to meet the deficiency, was held to be an assessment policy and the Hanford case was approved and followed, and the Jacobs, Toomey and McDonald cases were construed to apply only to policies where no provisions were made for an assessment and when the insured discharged his full obligation to the company by paying the stipulated premiums as they became due.

In Aloe v. Fidelity Mutual Life Ass'n, 164 Mo. 675, relied on by respondent, the insurance was for a stipulated sum on payment of the stipulated premiums. The eighth and ninth provisions of the charter of the company were as follows.

"MORTALITY FUND.

"Eighth. The amount to be paid by the member into the mortality fund, as specified in the body of this policy, is based on the adjusted mortality experience of life insurance companies for age of entry, and during the first five years from the date hereof, any saving between the mortality assumed and that actually experienced, shall belong to the general fund of the association, and thereafter it shall belong to the member, and shall be paid to him as provided in the body of this policy. Any deficiency in the mortality fund due to the advantage of the member shall be made good out of the equation fund.

"EQUATION FUND.

"Ninth. The member shall pay into the equation fund (which shall be deemed and regarded as a surplus of the association) an amount sufficient to cover his share of the increasing mortality cost due to advancing age, and if the amount specified in the body of this policy for said purpose, based on the tabulated experience of life insurance companies, shall be found by the actuary

to be insufficient; or, if the mortality among the members of the State in which the insured resides exceed that of the American table of mortality experience, thus causing a deficiency in his contributions to the mortality fund, said members being liable for such excess; or, if the State in which the member resides shall impose any tax or license not contemplated in the construction of the association's rates, then, in either event, the actuary shall determine the amount of deficiency properly chargeable to the member, which amount in either event, the member shall pay to the treasurer of the association within thirty days from the date of notice thereof.''

In respect to the policy and these charter provisions the court said, ''Translated into plain words, the contract is that the company will pay five thousand dollars to the beneficiary of the insured at his death; provided, every year or every quarter during his life the insured will pay the company a fixed premium; provided, further, that if experience shows that the company has not charged the insured enough premiums it may increase it at any time so as to keep the company solvent.  Such a contract lacks the essential elements to bring the defendant company within the meaning of an assessment company under our laws.''

The provision of the policy under consideration is that any mortality in excess of the American table of mortality shall be paid out of the emergency fund and this policy, if in force, shall be liable for its pro rata share of any deficiency caused therein by such payment.

The scheme of insurance as shown by the policy is to issue policies for a stipulated sum to become payable on the death of the insured as required by section 7903, Revised Statutes 1899.  To provide a mortuary fund to meet death losses a stipulated sum is required to be paid upon each policy at stipulated periods.  This sum is based on the American mortality tables.

It is further provided that out of the premium so paid a certain per cent shall be set aside as a reserve fund to meet extraordinary losses by death.  To keep this fund up to the required standard it was agreed be-

tween the policy-holders and the company that the board of directors of the company might make assessments on all the policy-holders and that they (the policy-holders) would pay these assessments in thirty days after receiving written notice. These assessments can be made for no other purpose than to provide a reserve fund for the payment of death losses whenever it shall. be necessary to have recourse to that fund for the purpose.

When the policy was issued its payment on the death of the insured did "in some manner or degree" depend upon the collection of an assessment upon the persons holding similar contracts and the case falls clearly within the Hanford case, and the policy is very much like the policy in the case of Haydel v. Mutual Reserve Fund Ass'n, 104 Fed. 718, which was held to be an assessment policy. We conclude that the contract of insurance is on the assessment plan.

2. By the terms of the policy and the application therefor, the warranties and statements made by the insured in her application for insurance and her answers to questions in her medical examination were made a part of the contract of insurance. In her application for insurance Cora Williams was asked the following questions: "What life insurance have you now? Names of companies and amount of insurance?" To which questions she gave the following answer: "None." Whereas in truth and in fact she had on February 5, 1898, made application to the Metropolitan Life Insurance Company for a policy of insurance for $142, payable to her estate, upon which a policy for the amount applied for had been issued to her and was in full force when she made her application to the defendant company for insurance, and continued in force until her death, and was after her death paid to her mother. Any misrepresentation made by the applicant, to procure a policy of insurance on the assessment plan, and which is warranted to be true and enters into the contract of insurance voids the policy. Aloe v. Mutual Reserve Life Ass'n, 147 Mo. 561; Aloe v. Fidelity Mu-

tual Life Ass'n; Elliott v. Des Moines Life Ins. Co.; Hanford v. Mass. Ben. Ass'n, supra.

These decisions were rendered on the statute (sec. 5869, R. S. 1889) prior to its amendment in 1897, being now as amended section 7910, Revised Statutes 1899. As amended this section reads as follows:

"Every corporation doing business under this article, shall annually, on or before the first day of February, return to the superintendent of the insurance department, in such manner and form as he shall prescribe, a statement of its affairs for the year ending on the preceding 31st day of December, and the said superintendent, in person or by deputy, shall have the power of visitation of and examination into the affairs of any such corporation, which are conferred upon him in the case of life insurance companies by the laws of this State; and all such foreign companies are hereby declared to be subject to, and required to conform to the provisions of sections 7896, 7991, 7890 and 7891 of the Revised Statutes of Missouri of 1899, and governed and controlled by all the provisions in said sections contained: *Provided always,* that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth and provided."

It is contended by respondent that all assessment companies, domestic as well as foreign, are brought under the general insurance laws by the amendment. The only amendment effected by the Act of 1897 was to incorporate sections 7896 (the suicide statute), 7890 (the misrepresentation statute) and 7891 (requiring a deposit of the premiums paid before a defense on the ground of misrepresentation can be made) of the general laws of the State into the section and to apply them to foreign insurance companies doing business in this State on the assessment plan.

We think it is obvious that it was not the purpose of the Legislature to subject domestic companies doing business on the assessment plan to these general laws.

To so construe the statute would bring domestic companies under the provisions of section 7991, Revised Statutes 1899, in respect to service of legal process upon them and require them to keep a designated agent in the State upon whom such process might be served and make of them an exception, in this respect, to all other domestic corporations. The clause which brings these amendments into the statute declares that they shall apply to foreign corporations. In respect to domestic corporations, the statute is word for word as it read before the amendment.

An effort was made by the respondent to show that Cora Williams did not know, or might not have known, that the Metropolitan Life Insurance Company had issued a policy on her life. Her mother testified that she had had possession of the policy and paid all the premiums. Cora signed the application and submitted to the medical examination in order to procure the insurance and knew that the policy had been issued, and it must be conclusively presumed that she knew, when she made answer to the questions directed to her for the purpose of eliciting the truth as to whether or not she had any other insurance, that her answer was untrue. The character of the evidence offered for the purpose of showing that she perhaps did not know of the policy in the Metropolitan Life Insurance Company, is not worthy of a moment's consideration.

This view of the case makes it unnecessary to consider any of the other errors assigned by the appellant. Our conclusion is that by reason of the false representation and warranty made by the insured in respect to other insurance on her life renders the policy sued on void.

The judgment is reversed. *Barclay, J.,* concurs; *Goode, J.,* dissents from the absolute reversal of the judgment on the ground that he deems the decision contrary to the decision of the Supreme Court in the cases of Jacobs v. Omaha Ins. Ass'n, 146 Mo. 523, and Aloe v. Life Association, 164 Mo. 675. This case is therefore certified to the Supreme Court for final determination.