JOSEPH GARDNER, DOING BUSINESS AS GARDNER FURRIER, RESPONDENT, v. QUEEN INSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLANT.—115 S. W. (2d) 4.

Kansas City Court of Appeals. March 7, 1938.

1102

*James P. Aylward, George V. Aylward* and *Terence M. O'Brien* for respondent.

*Borders, Borders & Warrick* for appellant.

CAMPBELL, C.—The plaintiff, a furrier, in carrying on his business in Kansas City, Missouri, accepted from his customers for storage furs and garments trimmed with fur. His place of business was burglarized in the nighttime of December 28-29, 1935, and furs and garments trimmed with fur, which he had accepted for storage, were stolen. Thereafter, this suit was brought upon a contract of insurance issued by the defendant to the plaintiff on December 16, 1935, to recover the value of the stolen garments, penalties for vexatious refusal to pay the loss, and for attorneys' fees. The trial to a jury resulted in a verdict and judgment for the plaintiff for $880 damages, $88 for vexatious delay, and $150 attorneys' fees. The defendant has appealed.

The defendant at the close of the evidence requested the court to direct verdict in its favor. The request was refused. Whether that ruling was or was not proper is the main question for determination on this appeal.

The policy provided as follows:

"This policy covers all kinds of furs, . . . being the property of customers, accepted by the Assured for storage, . . . and for which the Assured has issued a receipt under which the Assured agrees to insure the property. . . .

"This policy is extended to cover during transportation or otherwise such furs or garments trimmed with fur, the property of customers, for which the Assured has issued a certification of insurance, on form approved by this Company. . . ."

For each of the garments received by plaintiff he gave a receipt to the customer on which the name of the owner and the value of the garment were stated, and in each of which it was recited:

"In Consideration of the payment of storage charges, the Gardner

Fur Co., agrees to protect said articles from loss or damage by moths. In case of loss or damage the Company reserves the right to pay for any of the articles at the declared valuation set opposite the enumerated article or repair or replace any such articles, and shall be Liable Only to the Extent of the Valuation So Specified in This Receipt. . . .''

There is no controversy concerning the amount of the loss nor is it claimed the loss was through the procurement or the negligence of the plaintiff.

The evidence shows that during the negotiations which resulted in the issuance of the policy the defendant's state agent, Wintrol, went to plaintiff's place of business and obtained a copy of plaintiff's ''receipt forms'' which was the same as the form above quoted; that when a policy, such as the one here involved is sought, the insured must furnish to the insurer ''a copy of the form of receipt he (insured) gives to his customers.''

Plaintiff testified that defendant's adjuster, Miner, called on him on December 30, 1935, and requested that he obtain from his customers information as to the value of the stolen garments, when they were bought, and a full description thereof; that he obtained the information and gave it to Miner; and that Miner told him ''to go ahead and make settlements with the customers; that he would have the money in a very short time''. The plaintiff also said that defendant did not deny liability at any time, merely failed to pay the loss, and that he finally brought this suit after ''he got tired of waiting.''

The defendant, through its representative, Wintrol, on January 3, 1936, for the first time, advised plaintiff that the receipts issued by him ''do not comply with the terms and conditions'' of the policy and suggested that he print new receipts containing an agreement to insure or ''stamp'' on his receipts an agreement to effect insurance against loss or damage by fire, burglary or theft.

Miner, for the defendant, testified that he called on plaintiff on December 30, inquired concerning the circumstances of the loss, investigated the policy conditions, but did not agree to pay the loss; that later, at a time not disclosed, he told insured his claim was denied, but gave no reason for the denial, and that he did not request insured to get any information from customers.

The policy was cancelled April 6, 1936, and the defendant retained $13.34 of the $50 premium paid at the time the policy was issued.

In contending the case should not have been submitted to the jury, the defendant says the policy covered only the furs for which defendant had issued receipts under which he agreed to insure the property, and that the receipts did not insure the property of plaintiff's customers.

The policy says in plain words that it covers furs and garments trimmed with .fur, the property of customers received by plaintiff, and for which he has issued a receipt agreeing therein to insure such property; and in equally plain words the policy says it covers the property of plaintiff's customers for "which he has issued a certification of insurance on form approved" by the defendant.

The receipts issued by plaintiff to his customers say that in .event of "loss or damage" plaintiff reserves the right to pay for the article at the "declared valuation" or repair the article, and that he *shall be liable* for no more than the amount stated on the receipt. The receipt does not purport to limit plaintiff's responsibility for loss or damage .due to his negligence; on the contrary, the phrase "loss or damage," is a general one not limited by any specific provision and, therefore, covers loss or damage due to any cause. [Commercial Electric Supply Co. v. Missouri Commission Co., 116 Mo. App. 332, 148 S. W. 995.]

In none of the authorities cited by defendant was a receipt, such as the one here involved, considered or discussed.

There is another reason supporting the action of the court in refusing to take the case from the jury. Defendant with full knowledge of the provisions of the receipts issued the policy, collected and retained a premium and did not, prior to the loss, suggest or claim that the policy covered nothing.

Thus the defendant placed its own construction on the receipts, and by its acts said plaintiff had issued receipts "on form approved" by it. On the plainest principle of estoppel the defendant may not, on the facts herein stated, now claim there was no coverage. [Lux v. Milwaukee Mechanics' Ins. Co., 30 S. W. (2d) 1090; Block v. Fidelity & Guaranty Co., 316 Mo. 278, 290 S. W. 429.]

The defendant criticizes plaintiff's instructions Nos. 1, 2 and 3. These instructions submitted the case to the jury as one of fact.

In the trial the parties agreed that the amount of the receipts was $880. The plaintiff, as a matter of law, was entitled to a verdict and judgment for that sum. Therefore, erroneous instructions, if any, on the part of the plaintiff, would not cause reversal. [Aloe v. Fidelity Mutual Life Ass'n., 164 Mo. 675, 700, 55 S. W. 993.]

Plaintiff's instruction No. 4, which allowed recovery of penalties and attorneys' fees, is criticized on two grounds, namely, that there was no evidence upon which to base it; and that it improperly defined the word "vexatious."

The facts, as stated, show defendant had no reason to believe there was no liability. According to plaintiff, defendant at no time prior to the beginning of this action, denied liability. According to the defendant it. denied liability at some time prior to the commencement of the suit, but stated no reason for such denial.

On these facts, it was for the jury to say whether or not the refusal of the defendant to settle the loss was vexatious. [Lux case, *supra*; Reed v. Prudential Ins. Co., 73 S. W. (2d) 1027.]

Instruction 4 allowed the jury to award penalties and attorneys' fees upon finding that the defendant "vexatiously, that is, without reasonable cause," refused to pay the loss.

. In the Block case, *supra*, the Supreme Court defined the word vexatious as meaning "without reasonable or probable cause or excuse." The instruction substantially followed the language of the statute and was, therefore, proper. [Weintraub v. Abraham Lincoln Life Insurance Company, 99 S. W. (2d) 160, 165.]

Defendant complains of the action of the court in refusing its requested instructions H. and I. Instruction H. said that if plaintiff on January 16, 1936, intentionally reported to the defendant that "the gross receipts or values from the period of December 16, 1935, to January 1, 1936, to be declared under the policy" was "none," then the verdict must be for the defendant.

There was no evidence that plaintiff made any report such as the one mentioned in the instruction and, for that reason, the instruction should not have been given.

In the trial defendant attempted to prove the making of such a report. The offer was rejected, but no complaint is made of the action of the court in excluding the offer.

Instruction I. was legally the same as instruction H. The instruction should have been refused for the reason there was no evidence upon which to base it.

Numerous other instructions requested by the defendant were refused. We shall not discuss such instructions for the reason that the only issue which the defendant, under the facts in this case was entitled to have submitted to the jury, was the question concerning recovery of penalties and attorneys' fees. None of the refused instructions related to that subject.

It follows that the judgment should be and it is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.